No. 19,248.

J. W. WILLIAMSON, *Appellee*, v. THE PRAIRIE OIL AND GAS COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Instructions in Language of Pleadings —Not Erroneous.* It is not error to incorporate into the court's instructions the plain and simple language of the pleadings when the issues are fairly presented to the jury by the instructions as a whole.

2. SAME—*Instruction—No Prejudicial Error.* Unless an instruction is misleading, error can not be predicated upon it when it is supported, amplified and explained to the jury by other instructions.

3. SAME. Error can not be predicated upon an instruction that the jury may find for the plaintiff in any sum not exceeding the amount prayed for, when the jury only award half that sum on sufficient evidence.

4. PERSONAL INJURIES—*Damages—Future Pain and Suffering.* Future pain and suffering as an incident to physical injuries is a proper element of damage—following *Arkansas City v. Payne*, 80 Kan. 353, 102 Pac. 781.

Appeal · from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed February 6, 1915. Affirmed.

*W. S. Fitzpatrick, J. B. F. Cates,* and *N. E. Van Tuyl,* all of Independence, for the appellant.

*Charles D. Welch,* of Coffeyville, and *George H. Wark,* of Caney, for the appellee.

The opinion of the court was delivered by

DAWSON J.: This is an appeal from an award of $2500 in favor of J. W. Williamson, an employee of The Prairie Oil and Gas Company, for injuries sustained while employed by that company in the construction of a pipe line. On December 10, 1912, while appellee and three other men, under the charge of a foreman, were carrying a pipe about twenty feet long and weighing about seven hundred pounds, the appellee's fellow servant, one Harvey James, who was not physically fit for such heavy work, and who was carrying the rear end of the pipe opposite Williamson by means of a pair of calipers, suddenly dropped his end of the calipers, thus jerking Williamson to the ground and rupturing him.

The foreman at the time of the accident was Charles Badjent, although the appellant had another foreman, John Johnson, who was probably Badjent's superior.

James, the incompetent servant, was first employed the day before the accident, without any inquiry into his fitness. There is some discrepancy in the evidence as to whether Johnson or Badjent employed James, but it is clear that they both had authority to give orders on the work, to hire and discharge men, and to change the men from one part of the work to another.

It is also clear that on the afternoon of December 9, and the following forenoon on which the accident occurred, the foreman in charge had notice of James's incapacity. About half an hour before the accident

to Williamson, he complained to Badjent, the appellant's foreman then in charge, about James dropping the pipe. The other men on the work also complained; and Badjent promised to change James. Appellee's testimony, which is corroborated, in part reads:

"Badjent told me he would get another man. I certainly believed what he said, when he said he would get another man. . . . It was very uncomfortable to be jerked around that way."

Part of James's testimony reads:

"John Williamson complained to Charlie Badjent about my dropping the pipe. Charlie Badjent told Williamson that he would get another man as soon as he could find one. I dropped the pipe at about 11 o'clock. Williamson had the other end of the pipe at that time. At that time Williamson made a complaint about being hurt. He said, when I dropped the pipe it just tore him in two."

It was also proved that appellee had spent considerable sums of money for trusses, and expenses in going to Kansas City for an operation for hernia; that he had been unable to do much work for a year; that he continued up to the time of the trial to have pain and discomfort, and that before the injury he was an active, robust man, weighing one hundred and seventy pounds, and at the time of the trial, a year after his injuries, he weighed only one hundred and twenty-seven pounds.

The only errors assigned in this appeal relate to the court's instructions to the jury. On the first it is complained:

"1. That the trial court erred in reading to the jury the pleadings of the respective parties, and then stating to the jury, that, 'Within these allegations and counter-allegations is contained the issue for you to try and determine by your verdict in this case.'

"2. That the court erred in not stating and defining to the jury the issues to be tried and determined."

Counsel for appellee answer this criticism by saying that the court did not read the pleadings and that the

record does not show that they were read to the jury. An inspection of the pleadings does show that they were closely paraphrased by the court in stating the issues to the jury, but it does not appear that any obscure or technical language of the pleadings was incorporated in the instructions.

In *Railway Co. v. Eagan,* 64 Kan. 421, 67 Pac. 887, it was held to be error to send to the jury lengthy, prolix and redundant pleadings which were full of tautology and repetition.

In *Stevens v. Maxwell,* 65 Kan. 835, 70 Pac. 772, it was held material error to send pleadings which were laden with prolix and intricate averments to the jury.

In *Myer v. Moon,* 45 Kan. 580, 26 Pac. 40, the court referred the petition to the jury, indicating the paragraphs for their consideration by pencil marks. While this and the foregoing cases cited disapproved the practice of sending the pleadings to the jury it was not considered reversible error because the court did define the issues.

Another pertinent case is *Railway Co. v. Sternberger,* 8 Kan. App. 131, 54 Pac. 1101, where it was said:

"It is not reversible error for the court in its instructions, after reciting to the jury the nature of the cause of action and the issues to be determined by the jury, and what it is necessary for the plaintiff to prove thereunder in order to recover, to add 'the grounds of negligence claimed by the plaintiff are more fully set forth in the petition, to which you are referred.'" (Syl. ¶ 3.)

In the opinion it was said:

"The fourteenth contention of counsel is that the court [Judge Alfred W. Benson] erred in using certain language in giving its instructions to the jury. After reciting to the jury the nature of the cause of action and the grounds of negligence complained of by the plaintiff, it added: 'The grounds of negligence claimed by the plaintiff are more fully set out in the petition, to which you are referred.' The contention

is that it was the duty of the court to construe the pleadings. The court did construe them. The court stated to the jury very clearly and concisely what the issues were and what it was necessary for the jury to find in order that the plaintiff might recover. This reference to the petition, under the circumstances, could not have prejudicially affected the rights of the defendant." (p. 134.)

In *Kamm v. Sloan,* 72 Kan. 459, 83 Pac. 1103, it was said:

"Another contention is that the court erred in copying the petition and exhibits into the instructions and submitting them as a whole to the jury. It is much better practice for the court succinctly to state the issues to the jury; in many cases the pleadings do not strictly conform to the code in simplicity, and therefore tend to confuse rather than to elucidate the questions before the jury. (*Railroad Co. v. Eagan,* 64 Kan. 421, 67 Pac. 887; *Stevens v. Maxwell,* 65 Kan. 835, 70 Pac. 873; *Myer v. Moon,* 45 Kan. 580, 26 Pac. 40; *Railroad Co. v. Dalton,* 66 Kan. 799, 72 Pac. 209.) In this case, however, the petition was short, and the issues were distinctly stated in the instructions to the jury. Therefore, it can not be said that it was prejudicial error to incorporate a copy of such a petition in the instructions." (p. 460.)

(See, also, *Culbertson v. Sheridan,* 93 Kan. 268, 280, 144 Pac. 268.)

The foregoing are the principal Kansas decisions on this subject, and from these, as well as the authorities which are cited by counsel, it appears that in cases where the pleadings are involved in complex and intricate phraseology it is not good practice and may be reversible error to *send* the pleadings to the jury; in cases where the pleadings are simple the practice of *sending* them is not commended, but is not reversible error; but where the court merely paraphrases and incorporates the plain and simple language of the pleadings in stating the issues to the jury it is not error nor even ground for just criticism.

The next error assigned reads:

"3. That the court erred in giving each and every part of Instruction No. 12;

"(a)  In the first part of said instruction, down to and including line 10, the facts involved therein were not in issue on trial;

"(b)  The facts therein stated were not supported by any evidence;

"(c)  The same is an erroneous and incorrect statement of the law;

"(d)  The second part of said instruction did not contain a full statement of the law, in that it failed to state that the jury must also find that the plaintiff relied upon the agreement and promise of the foreman, Badjent, that he would remove the man James within a reasonable time.

"(e)  In that the jury was not fully instructed as to what would constitute a reasonable time within which to remove the fellow servant James."

This was one of fourteen comprehensive and careful instructions submitted by the trial court and should not be excised from the others and made the basis of error.  Certainly the trial court did not err in giving *each* and *every* part of that instruction.  We can not agree with counsel that the first ten lines involved facts which were not in issue, and they were supported by evidence; nor does this instruction when read in connection with all the others erroneously state the law.  The second part of the instruction when construed with the other instructions could not have misled the jury, either on the point that they must find that the appellee relied upon the promise of the foreman to replace the incompetent workman, or on the question as to what would constitute a reasonable time to replace him.  It seems to us that the tenth instruction is sufficient on that point when no special instructions were asked by appellant:

"10. If the master promises to repair, to discharge, or otherwise render safe, the danger may still be so glaring that a reasonably prudent man would not expose himself to it until a change has been made.  If so, and the servant continues to work, he assumes the

risk. If the hazard is not so great but that with reasonable prudence the work may still be carried on, the servant may, exercising due care, work a reasonable time awaiting repairs or other promised removal of danger without assuming the risk. If after the lapse of such time the promised betterment is not installed, and the negligent condition again takes on the character of permanency, the servant assumes the risk and can not recover damages."

The next error assigned reads:

"4. That the court erred in each and every part of instructions Nos. 13 and 14, wherein the jury is authorized, instructed or permitted, if the verdict be for the plaintiff, to find and assess damages for future pain and suffering or for permanent injuries, for the reason that such parts of said instructions, Nos. 13 and 14, were wholly unsupported by the evidence and were against the evidence."

The total damages allowed appellee were $2500. Using appellant's analysis, the damages for medical expenses and loss of time were $892.85, and for future pain and suffering and for permanent injuries the balance of the total award, $1607.15. We think there was testimony touching permanent injuries alone to warrant this sum; nor do counsel cite authorities showing that it would be improper to allow damages for future pain and suffering in a case like this where actual damages and pain and suffering had been sustained and the pain and suffering were still continuing. Such allowance was upheld in *Arkansas City v. Payne,* 80 Kan. 353, 102 Pac. 781.

The fifth assignment of error reads:

"5. That the court erred in instructing the jury that they might find for the plaintiff in any sum not exceeding Five Thousand Dollars ($5000), for the reason that the evidence did not warrant such instruction."

Since the jury fixed appellee's damages at $2500 and that award was sustained by the evidence, we can not see the force of the criticism of this instruction.

In fine, this is simply a case which was carefully prosecuted, skillfully defended, free from serious error, and the judgment is affirmed.