No. 36,588

J. C. LONG and MARY VIRBA LONG, *Appellees*, v. L. T. SHAFER, HER-
MAN TINDELL and COMMERCIAL STANDARD INSURANCE COMPANY,
*Appellants.*

(174 P. 2d 88)

Opinion filed November 9, 1946.

*Wayne Coulson* and *Paul R. Kitch,* both of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Manford Holly, Dale M. Stucky,* all of Wichita, *S. R. Blackburn* and *Tudor W. Hampton,* both of Great Bend, were with them on the briefs for the appellants.

*L. J. Bond,* of El Dorado, and *Arnold C. Todd,* of Wichita, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action for damages for wrongful death growing out of a collision of an automobile and a truck. The result was a judgment for plaintiffs and the defendants appeal, specifying as errors that the trial court erred in (1) overruling defendants' motion for judgment *non obstante veredicto;* (2) overruling defendants' motion to set aside certain answers to special questions; (3) overruling defendants' motion for a new trial; and (4) rendering judgment in favor of plaintiffs and against defendants. The case will be stated sufficiently to dispose of the contentions made under those specifications.

The petition alleged that plaintiffs were the parents of Betty Alice Long, a minor, hereafter referred to as the decedent, who died as a result of the collision later mentioned, and that there was no administration of her estate; that on December 3, 1943, decedent was riding to the south in a Chevrolet coupé with Marion Wing and Jack Padfield, the driver, on Douglas road, a highway in or near the city of El Dorado; that a truck owned by defendant Shafer and driven by his employee, defendant Tindell, was proceeding north along the same highway; that about the time both vehicles reached the junction of Douglas road and Sunset Lawns boulevard, Tindell negligently turned to the west and to his left and attempted to proceed into Sunset Lawns boulevard and caused his truck to

crash into the Chevrolet coupé in which the decedent was riding, and she was instantly killed. Although stated at length in the petition, the negligence charged against the defendants was in substance that Tindell did not give the signals required by law of his intention to make a left-hand turn; that he turned to the left before he reached the intersection of Douglas road and Sunset Lawn boulevard, when he knew that the Chevrolet coupé was approaching from the north and had already entered the intersection or was so close as to constitute an immediate hazard or danger of collision; that he failed to keep a proper lookout and to observe the position of the Chevrolet coupé with reference to the intersection; that he attempted to make a left-hand turn from Douglas road in violation of the statutes of Kansas in that he started to turn to the left before he had reached the intersection and in negligent disregard of the safety and rights of the decedent, and in driving his truck, under the circumstances, at such a rate of speed he could not stop and avoid the collision, when he could have observed that the Chevrolet coupé had already entered the intersection or was so close to it as to constitute an imminent hazard. Allegations concerning Shafer's operating a transport carrier, requirements as to insurance coverage and that the defendant insurance company had issued its policy need not be noted further, nor need we notice allegations concerning relations and status of the decedent to her parents for the purpose of showing extent of their loss from her death.

Summarized, it may be said the answer admitted that defendant Shafer owned the truck in question; that it was operated under a contract carrier permit and that the defendant insurance company issued the policy of insurance thereon. The fact of the collision was also admitted but negligence of the driver, defendant Tindell, was denied. It was affirmatively alleged that the Chevrolet coupé was driven by Padfield at a high and dangerous rate of speed, and that Padfield negligently drove his car into the intersection without regard to the position of the truck then in the intersection, and into the front end of the truck; that as soon as it was apparent that Padfield was going to enter the intersection Tindell immediately applied his brakes and brought his truck to a stop. It was also alleged that Padfield had been arrested on previous occasions for traffic violations and was known to the decedent to be a reckless and negligent driver; that she was familiar with the highway

and that she could or should have observed the truck and its change of course, and omitting some detail, should have warned Padfield of impending danger for her own safety. Then follows a specification of five items, based on the above allegations, that the decedent was guilty of negligence; that the collision was unavoidable on the part of Tindell but occurred by reason of the negligent acts of Padfield and the decedent, and if Tindell was negligent, the negligence of Padfield and the decedent contributed proximately to cause the collision and damage. Plaintiffs' reply was a denial of new matter.

Matters occurring during the trial and of which complaint is made will be mentioned later. As a result of the trial the jury returned a general verdict in favor of the plaintiffs and answers to special questions as follows:

"(1) At what distance was the transport truck which Herman Tindell was driving from the intersection of Douglas Road and Sunset Lawns Boulevard when he first saw the Chevrolet Coupé in which Betty Alice Long was riding? A. 150 feet to 200 feet.

"(2) At what distance from said intersection was the Chevrolet Coupé in which Betty Alice Long was riding when Herman Tindell first saw it? A. 700 feet to 800 feet.

"(3) At what rate of speed was the Chevrolet Coupé traveling when it was five-hundred feet north of said intersection? A. 25 MPH to 50 MPH.

"(4) At what rate of speed was said Chevrolet Coupé traveling at the time it entered said intersection? A. 25 MPH to 50 MPH.

"(5) At what rate of speed was the transport truck traveling at the time the defendant Herman Tindell started to turn said transport truck from Douglas Road into Sunset Lawns Boulevard? A. 12 MPH.

"(6) Where was the Chevrolet Coupé in which Betty Alice Long was riding at the time the transport truck commenced its lefthand turn from Douglas Road into Sunset Lawns Boulevard? A. Near the intersection.

"(7) After the defendant Herman Tindell started his left-hand turn from Douglas Road into Sunset Lawns Boulevard what; if anything, could he have done which was not done to avoid the accident? A. He could have straightened his truck to remain on the slab or applied his brakes and stopped leaving room for passage of another vehicle.

"(8) What warning or signal, if any, did Herman Tindell give that he expected to turn from Douglas Road into Sunset Lawns Boulevard? A. Hand signal.

"(9) If you find the defendant Herman Tindell did give a signal or warning before starting to make said turn, at what distance from said intersection was said signal or warning given? A. 150 feet to 200 feet.

"(10) How fast was said transport truck traveling at the time of the collision or impact? A. 7 MPH.

"(11) Do you find that the defendant Herman Tindell was guilty of negligence? A. Yes.

"(12) If your answer to Question No. 11 is in the affirmative, state of what such negligence consisted. A. Violation of state law in regard to making a left hand turn, at the intersection.

"(13) What, if anything, prevented Betty Alice Long from seeing the defendant's truck as it started its left-hand turn? A. Nothing that we know of.

"(14) Do you find that Betty Alice Long was guilty of negligence? A. No."

The remainder of the questions and answers are of no consequence in this appeal.

Immediately upon the verdict and answers being returned the defendants requested the court to instruct the jury to return more definite answers to special questions 3, 4, 6 and 8. This request was denied. Thereafter the defendants filed their motion that the answers of the jury to special questions 11, 12 and 14, be set aside as unsupported by the evidence, as mere conclusions and as in conflict with other specific findings; also their motion for judgment *non obstante veredicto*, and their motion for a new trial. These several motions were presented and, as stated in the journal entry, after full and complete argument by counsel for defendants in support, and by counsel for plaintiffs in opposition, the trial court denied each of the motions and rendered judgment in favor of the plaintiffs and against the defendants. From these several rulings and the judgment the defendants appeal. In their abstract appellants state their specifications of error as previously indicated. Coupled with their brief is a supplemental abstract, containing amended specifications of error. It may be said, however, that two general questions are presented: (1) That defendants were entitled to judgment notwithstanding the verdict, and, if not, (2) they are entitled to a new trial. The specifications of error sufficiently cover these two general questions, and the subordinate questions discussed under the main heads.

1. Were the appellants entitled to judgment notwithstanding the verdict? Preliminary to a discussion of this question, it is well to bear in mind the rule is, that for the purpose of testing such a motion the movant concedes that the evidence supports the answers made. (See, *e. g., Witt v. Roper*, 149 Kan. 184, 187, 86 P. 2d 549; *Eldredge v. Sargent*, 150 Kan. 824, 829, 96 P. 2d 870; *Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, 283, 139 P. 2d 859; and the cases cited in each.) A further rule to be remembered is that nothing will be presumed in favor of the special findings as against the general verdict, but the special findings will be given such con-

struction, if possible, as will bring them into harmony with the general verdict, and that while nothing will be presumed in favor of the special findings as against the general verdict, they may be viewed and interpreted in the light of the testimony. (See, *e. g.*, *Marley v. Wichita Transportation Corp.*, 150 Kan. 818, 96 P. 2d 877 and cases cited.) Under the above rules, we now ignore any motions made to have certain answers to special questions made more definite or to set aside other answers as unsupported by the evidence. Appellants' argument under the above question is divided into two parts, first that the answers convicted the decedent of negligence contributing to her death, and second, the answers acquitted the truck driver of any negligence. These will be discussed in the order stated.

Appellants do not ignore the answer to question 14 that the decedent was not guilty of contributory negligence, but contend the finding is a general one and under authorities such as *Harrison v. Travelers Mutual Cas. Co.*, 156 Kan. 492, 134 P. 2d 681, the general finding so made must be controlled by and yield to the detailed findings of ultimate facts. The argument is that under findings 1 and 2 the truck and the Chevrolet coupé were at least 850 feet apart when the driver was 250 to 200 feet south of the intersection at which time he gave a signal that he expected to turn; finding 8, that at the rate of speed traveled by each the Chevrolet was "near the intersection"; finding 6, when the truck started to turn to the left, there was nothing to prevent the decedent from seeing; finding 13, but that she did nothing to control the car in which she was riding. This last statement is predicated on evidence and not on findings and may not be used to impeach the verdict. We realize that the answers to questions 3 and 4 leave room for an argument that if the speed of the Chevrolet coupé was fifty miles an hour, it could not have been in or near the intersection at a time when its occupants could have seen the truck start to turn to the left, but if its speed was only twenty-five miles per hour, an entirely different conclusion would be reached.

The situation may also be viewed from another angle. There is nothing about the answers that compels any conclusion that the driver of the truck gave any signal of intention to turn left except when he was 200 feet south of the intersection (findings 1 and 8) and traveling twelve miles per hour (finding 5). At that time the Chevrolet was 750 feet north of the intersection (finding 2) traveling fifty miles per hour (findings 3 and 4). Any computation shows

that at the distances and rates of speed each vehicle was traveling, the Chevrolet coupé would reach the intersection before the truck did and before the truck started its turn. If that were the fact, the driver of the Chevrolet coupé and the occupants did not have, to assume the truck would turn to its left and in their line of traffic. The subject need not be treated further. The specific findings relied on by appellants, i. e., 1, 2, 3, 6, 8, 9 and 13, do not compel any conclusion that finding 14 is too general. It is possible to reconcile the findings. The appellees are entitled to a favorable and not unfavorable interpretation, without regard to possible unfavorable evidence not included in a finding, and so viewed the appellants were not entitled to have their motion sustained on the ground the special findings convicted the decedent of negligence contributing to her injuries.

Did the special answers and findings acquit appellants' driver of negligence? In arguing this subdivision of its main question appellants direct attention to distances and speeds as found by the jury, and supplemented by reference to certain evidence that the intersection was 132 feet wide at the immediate point where Sunset Lawns boulevard as actually used met the pavement on the north and south highway, and to certain road signs tending to prove there was a speed limit of thirty miles per hour on the north and south highway, and argue that the action of the driver of the truck in turning to the left could not have been negligence on his part. In making this argument it is said the burden of proof was upon appellees and that the jury's answers to questions 3, 4 and 6 must be construed as equivalent to an answer of "don't know" and therefore construed against the appellees. In support our attention is directed to quotations from *Haley v. Kansas City Public Ser. Co.*, 154 Kan. 477, 119 P. 2d 449; *Darrington v. Campbell*, 150 Kan. 407, 94 P. 2d 305; and *Mehler v. Doyle*, 271 Pa. 492, 115 Atl. 797. In our opinion these decisions do not support the contention. Appellants also direct our attention to *Fisher v. Wichita Transportation Corp.*, 156 Kan. 500, 134 P. 2d 393, and argue that if we construe the answer to question 4 .as being twenty-five miles per hour, the facts are identical. We cannot agree. In that case the finding was that the plaintiff was 150 feet from the intersection when the bus started its left-hand turn. Only by construing the findings against the plaintiffs may it be said with certainty that the Chevrolet coupé was not in or near the intersection when the truck started its left-hand turn. In a sense the argument here parallels that presented in contending the findings

convicted the decedent of negligence. It is possible to resolve all of the answers in favor of appellants, and to consider some evidence which favored their contention, and to say the decedent was guilty of negligence and the truck driver was not, and it is also possible to take those same answers and interpret them favorably to the plaintiffs and conclude the decedent was not guilty of negligence and that the truck driver was. Under the rules heretofore mentioned, the latter interpretation is the one we are bound to give.

The trial court did not err in its ruling on appellants' motion for judgment *non. obstante veredicto.*

2. Were the appellants entitled to a new trial? Under this heading six general contentions are made, the first one being composed of three subdivisions. In view of our conclusions hereafter stated, we shall comment briefly on some of the contentions not sustained because the same matters may be presented at a later trial. Others of the contentions will only be mentioned for likely the facts giving rise to them will not again occur.

It is first contended that the trial court erred in refusing to instruct on the statutory definition of "intersection" and "roadway" (see G. S. 1945 Supp. 8-501), which instruction had been requested by appellants. It may be observed the trial court did not in its own language, instruct the jury with reference to the provisions of the Uniform Act Regulating Traffic On Highways (G. S. 1945 Supp., ch. 8, art. 5), but stated that pertinent parts of the Kansas statutes applicable to the case were as follows; after which it quoted verbatim all or portions of the following sections of the statute: 8-532 dealing with speed; 8-544 with turning at intersection; 8-547 with signals; 8-549 with manner and method of giving signals; 8-551 with vehicles turning left at intersections; and by a following instruction advised the jury that if a driver violated the law in driving a motor vehicle or in attempting to turn left at an intersection, the violation constituted negligence. The appellants had requested an instruction defining the words "roadway" and "intersection," both of which are used in portions of the sections of the statute as quoted in the opinion and later objected to the instruction as given. It may be doubted that in this case the refusal of the trial court to give the requested instructions constituted error for, as we read all of the instructions in the light of the evidence, an instruction embodying the substance of the statutory definition of "intersection" would not have helped and might have hurt the appellants, in view of their

theory of defense. The effect of a definition of "roadway" is not as clear, but we cannot say that it was prejudicial error not to so instruct. As a general rule, however, in instructions where quotation is made of statutory provisions, and those provisions contain words defined in the statute, the jury should also be instructed as to those definitions.

Appellants also contend the trial court erred in its instructions as to the charges of negligence. The complaint arises out of the following: In their petition plaintiffs charged negligence in nine paragraphs and at such length that the printing thereof in the abstract consumes three pages. Appellants filed their motion to have certain allegations stricken as being mere conclusions of the pleader; or in the alternative to have them made more definite and certain; and to have others stricken as being repetitions. Appellees resisted this motion and the court ordered one paragraph stricken. In its instructions, the trial court, in reviewing the issues presented by the pleading, did not summarize the charges of negligence but set them forth in all of the detail as alleged in the petition, and then in a later paragraph of the instruction again repeated the charges of negligence. Defendants objected to the instructions, the objections not being allowed. In support of their contention the trial court erred, appellants rely principally upon *Kelly v. Meyer,* 156 Kan. 429, 432, 433, 134 P. 2d 658, which in a general way supports their claim of error. Appellees direct our attention to the fact the trial court's instructions covering the appellants' charges of contributory negligence of the decedent were similarly treated and appellants did not object. We can hardly take the position that two errors amount to no error. Certainly the allegations of negligence were not in strict accord with the statutory command that the cause of action be stated "in ordinary and concise language, and without repetition," and the complete restatement of the pleadings followed by the second statement did place the matter before the jury in a strong light. Although the similar treatment accorded the appellants' charges of contributory negligence probably did have some effect in ameliorating the stress placed on appellees' charges of negligence by reason of twice repeating all of the details as alleged in the petition, the practice is not one to be approved. The court is of opinion that in the circumstances here existing, it cannot be said the error was prejudicial. On a second trial the matter may be so treated it is not open to objection.

The next error charged is that the trial court erred in refusing to permit the jury to consider the interest of the witness Wing in the outcome of the action. The facts giving rise to this objection may be briefly stated. Marion Wing was the only witness testifying in behalf of the appellees as to matters preceding the accident and as to the collision. He testified that Jack Padfield was driving the Chevrolet coupé in which he and the decedent were riding at the time of the accident. Wing was the only survivor. On cross-examination he was asked whether he had a petition on file asking for the recovery of substantial damages growing out of the same accident to which he answered affirmatively. An objection was made to the question, which was sustained by the trial court. Later in its instructions, the trial court advised the jury that in judging the credibility of witnesses they should have in mind that a witness is presumed to tell the truth but the presumption might be overcome by contradictory evidence, by the manner in which the witness testifies, by the character of his testimony, pertaining to his motives. Defendants formally objected to the instruction. The trial court, by another instruction, advised the jury they must not consider for any purpose any evidence offered and rejected or which had been stricken by the court and that such evidence must be treated as though the jury had never heard it. No specific objection was made to this instruction but objection was made to the trial court's refusal to give requested instructions, of which more later. In its instruction 43, originally stated as 42, the jury were advised they were the exclusive judges of the facts, the weight of the evidence and the credibility of the witnesses. Appellants requested the trial court to add a sentence that the jurors might consider the witness's candor or lack of it, demeanor on the witness stand and his interest or disinterest in the outcome of the suit. This request was denied. Appellees place some weight on the fact that the appellants did not object to the one instruction as noted above, and at least inferentially argue, that appellants waived any error there may have been, and they also argue that the jury understood fully the trial court's instruction with reference to credibility and that appellants were not prejudiced. We think the matter may not be disposed of so easily. True, the jury were instructed as to credibility but they were also advised not to take into consideration for any purpose any evidence offered and rejected or which had been stricken out. We can only assume the jury followed the instruction. The trial court re-

fused to give a requested instruction and therefore Wing's interest in the outcome of the suit was not a subject for consideration. In our opinion the court erred in sustaining appellees' objection to the question. The instruction the jury was not to consider the evidence perpetuated the error, especially in view of the trial court's refusal to give the instruction on the point as requested by the appellants. The answer made to the question to which the objection was sustained shows that Wing did have an interest in the outcome of an action like in character to the one filed by him. That the answer might have affected the weight to be given his testimony is not subject to debate. There may be circumstances under which we might not be willing to say the striking of the answer constituted reversible error, but we are not willing to do so under the facts previously narrated. The trial court erred in sustaining the objection to the question, and in refusing, in view of the instruction given, to give the instruction requested by the appellants.

Appellants further contend that the trial court erred in refusing to require the jury to make definite answers to special questions 3, 4 and 6. The special questions and answers have been set out heretofore and attention directed to the motion of appellants that the jury be instructed to return more definite answers. When that motion was made counsel for appellees objected, stating that in view of the fact that the jury did not find Betty Alice Long guilty of negligence the answers became immaterial, and the motion was denied. Briefly it may be said there was evidence that the Chevrolet coupé was going as fast as fifty miles per hour and as slow as twenty-five miles per hour. Appellees argue that it makes no difference whether the speed was one or the other figure. We do not agree. Under findings 1 and 5 the truck was not to exceed 200 feet from the intersection, traveling north at twelve miles per hour. The rate of speed at which the Chevrolet coupé approached was a very material factor to determine whether the coupé was so close to the intersection as to constitute a hazard. The function of the jury was to determine the truth from the contradictory testimony, and to express that determination in their answers. To state the two extremes of speed to which the witnesses testified was not a performance of their duties. As was said in *Lamb v. Liberty Life Ins. Co.*, 132 Kan. 383, 386, 295 Pac. 698:

"It is also suggested that some of the evidence on the questions was conflicting, but it was the function of the jury to settle the conflicts by direct and

candid answers. . . . It was the plain duty of the court to have sent the jury back for further consideration of the special questions with the instruction to determine the questions of which they had washed their hands and left undetermined."

One of the purposes in submitting special questions is to determine the facts which are essential elements of the result reflected in the general verdict and to test the soundness of that verdict. In the answers especially to questions 3 and 4, and to a lesser extent to question 6, there was no determination, although there was evidence from which a determination could have been reached. The trial court erred in its ruling to the prejudice of the appellants.

Appellants further contend the trial court erred in unduly restricting their opening statement at the trial. Without repeating any part of the statement, the point raised is that the court erred in limiting counsel to a bare statement of facts and refused to permit any statement as to the law applicable. We shall not treat the matter at length. While it may be conceded that counsel may state the facts and the theory of law and fact relied on, in the instant case counsel undertook to tell the jury what the court would instruct them as to the law. The statement was objectionable, and the trial court did not err in sustaining appellees' objection to it.

Another claim of error is that appellees' counsel was guilty of misconduct at the trial. In presenting their case appellees presented as a witness a truck driver of fifteen years' experience who testified with reference to the positions of the truck and coupé after the collision. He was then asked if he had an opinion from his observation of them as to the cause of the collision. An objection was sustained. Later, the sheriff of Butler county was called and testified he had driven trucks over a long period, and after being examined as to facts he observed, was asked if he had an opinion as to the cause of the collision. Objection to the question was sustained. The argument is that appellees' counsel was a capable attorney and knew the questions were objectionable and asked them solely to prejudice the appellants before the jury. In our opinion the record does not disclose the evil purpose assigned. It is proper to point out that the questions asked called for answers that invaded the province of the jury. During the trial appellees argued that the sheriff was an expert and therefore could give his opinion. If testimony as to the cause of an automobile accident may ever be the subject of expert testimony it may not be in a case where the sole qualification of the witness is that he drove a truck for

many years. Counsel should avoid asking questions which he has good reason to know a witness may not be permitted to answer. The fact that in the heat of a trial an attorney may do so, however, does not of itself warrant a reversal. The trial court sustained the objections made to the questions. It does not appear that what occurred, when considered with other incidents of the trial, prejudiced the appellants.

And finally, it is contended the appellees were guilty of misconduct because they mingled with some of the jurors during the course of the trial. Assuming that occurred, there was no showing there were any conversations respecting the facts involved in the trial. It appears from an affidavit filed and presented with the motion for a new trial the matter was brought to the trial court's attention and it cautioned appellees' counsel and that he should caution appellees, but that despite the suggestion they later mingled with the jurors. We need not discuss this phase further for it would appear unlikely that there will be a recurrence at any other trial, for before it can be had appellees' counsel will have had an ample opportunity to advise them as to the course of conduct they should pursue during the trial.

On account of the errors heretofore noted as being prejudicially erroneous, the judgment of the trial court is reversed and the cause remanded for a new trial.

SMITH, J., dissents from paragraphs 7 and 9 of the syllabus and corresponding portions of the opinion.

BURCH, J., not participating.