No. 39,829

Richard Steck, *Appellee* and *Cross-Appellant,* v. The City of Wichita, a Municipal Corporation, *Appellant* and *Cross-Appellee.*

(295 P. 2d 1068)

306

Opinion filed April 7, 1956.

Dale M. Stucky, of Wichita, argued the cause, and Fred W. Aley, Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt, and Theodore C. Geisert, all of Wichita, were with him on the briefs for the appellant and cross-appellee.

J. Francis Hesse, of Wichita, argued the cause, and W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, James W. Sargent, S. C. Durkin, Stanley E. Wisdom, Cecil E. Merkel, and Vincent L. Bogart, all of Wichita, were with him on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

ROBB, J.: This was an appeal from a verdict and judgment in the trial court where both appellant and appellee had appealed and cross-appealed from an award of appraisers in a condemnation proceeding under the power of eminent domain. The appeals were consolidated for jury trial and remained consolidated on appeal to this court.

The record disclosed that appellee owned 80.97 acres of land north and a little west of the city of Wichita; the acreage was rectangular in shape, raw and unimproved; the Little Arkansas River made a hairpin bend in the east side of the rectangle and there was a wooded section on each bank; underbrush of various densities was present in the wooded sections; appellee's improvements were slightly west of the northeast corner of the parcel of land and the only use to which the land had been put was that of farming; as early as 1944 there had been a government survey in connection with the Wichita-Valley Center Flood Control Project, but the

boundaries of the project were changed from time to time until it was finally decided that 38.11 acres of appellee's land were necessary to be taken by the city of Wichita; in considering the use of the 80.97 acres of land, 20.70 acres were actual river bottom, trees and farm land, but the remainder was very good bottom land which averaged thirty-one bushels of wheat to the acre in 1953; all but 3.52 acres were inundated by the record flood of 1945; there was a sand road along the north side, but there were no other public roads on or around appellee's land; of the 38.11 acres taken, 7.50 were river bed, 9.44 were covered by timber and underbrush to different stages of density and were subject to a maximum ten feet of water at flood stage, 9.72 acres were subject to a maximum overflow of five feet, and only 2.96 acres of the remaining land were not subject to flooding.

In 1949 after construction had begun in regard to work on the over-all flood control project on land other than appellee's and more especially during 1951 and the early part of 1952, residential development began immediately east, southeast, south, and southwest of the land in question.

In discussing this appeal we shall hereafter refer to the appellant as the city and to the appellee as the landowner.

On February 6, 1952, the city filed a petition reciting its adoption of a resolution on May 9, 1951, which had directed an engineering survey and the filing with the city clerk of such survey with description of the land to be taken including appellee's 38.11 acres; the resolution had declared the condemnation necessary and had asked for appointment of appraisers to proceed under the pertinent provisions of G. S. 1949, Article 2, Chapter 26; Article 33, Chapter 19. Three commissioners were appointed February 6, 1952, and on October 7, 1952, they made a total award to the landowner in the sum of $24,531.50 from which the city appealed on November 4, 1952, and the landowner subsequently appealed on November 6, 1952. The causes were consolidated for trial in the district court, and they have come to this court in consolidated form.

No challenge was made by either party to the pleadings in the record before us, they were not abstracted, and we will not hereafter refer to them. There were stipulations of fact made from time to time, and we will mention the pertinent ones as we proceed.

Counsel for the landowner in his opening statement referred to sales of one half acre tracts immediately adjoining the land in ques-

tion on the south for $1,000 to $1,250 as early as September, 1952. The city objected to this and moved for a mistrial because of prejudice to its cause before the jury, which objection was not directly ruled upon except that mention of the amount was to be avoided and evidence regarding the parcels would be ruled on later. It is a common and well-established rule that an opening statement merely outlines what the party intends to show by his evidence, but it must be within the confines of his pleadings. Since the pleadings are absent from the record, we cannot speculate as to what they contain.

At this point it should be noted that no special questions were submitted to the jury and many of the points of error raised by the parties are impossible of determination here because there is no way to ascertain how the jury arrived at its general verdict, what elements went into its make-up, or the effect of certain evidence, statements, or actions of parties and counsel during the trial. We recognize the importance of this case but nevertheless we are not permitted to go outside the record in this, or any other case, in order to make final determination thereof. There are numerous decisions in our reports where this court found technical error in and during trials of both civil and criminal cases, but failure to show that such error materially affected or prejudiced the rights of the party complaining made it necessary to hold that the ultimate outcome in the trial court cannot be disturbed by this court on appeal. ( G. S. 1949, 60-3317; *Allen v. Bowling,* 173 Kan. 485, 249 P. 2d 679; *In re Estate of Lasswell,* 178 Kan. 48, 50, 283 P. 2d 247, and citations therein contained.)

It would avail nothing in this case to determine that the trial court may have erred and then be unable to find from the record any prejudice to the cause of the complaining party. In *Long v. Shafer,* 162 Kan. 21, 174 P. 2d 88, it was said,

"One of the purposes in submitting special questions is to determine the facts which are essential elements of the result reflected in the general verdict and to test the soundness of that verdict." (p. 32.)

It is interesting to note that in the Long case the opening statement of counsel also was under attack and this court there went further than we are herein when it said,

"While it may be conceded that counsel may state the *facts* and *the theory of law and fact relied on,* in the instant case counsel undertook to tell the jury what the court would instruct them as to the law." (Our emphasis.) (p. 32.)

This court held in the Long case that telling the jury what the court would instruct as to the law was properly ruled objectionable by the trial court, but statements as to the facts and the theory of law and fact to be relied on were proper.

The next question raised by the city is that the trial court erred in admitting evidence relating to a preliminary plat filed by the landowner, which brings us to the first mention of the landowner's theory of his damages in this case. Without repeating the exact evidence presented it will be sufficient to show that subject to the city's objection as to materiality it was stipulated that on August 20, 1952, a preliminary plat was filed covering part of the land involved herein. The landowner testified that the highest and best use of his land was for subdivision with an over-all value of $2,000 per acre. The uncontradicted fact appeared that there was residential development immediately adjacent on the east, southeast, south, and southwest.

The landowner's witnesses testified, first, that the highest and best use was for subdivision, and secondly, that the value for such purpose at the time, or just before the taking, was as follows:

D. W. McDowell placed the value of the land taken at the figure of $34,000, with a value of $1,250 per acre for the remaining, and a diminution in value on the remainder of $6,500.

Chester Gray placed the value of the land to be taken at $36,000 with a value on the remainder of $1,000 to $1,200 per acre and a diminution of $6,500 to the remainder.

Joe F. Creed valued the 38.11 acres at $38,000 with a total damage to the remainder of $10,200. On cross-examination Creed was the only witness to testify that the entire 80.97 acre farm before taking was worth $100,000 and after the taking was worth $68,650, making the difference, or damages, $31,350.

Ray Lawrence, an engineer with Black & Veatch of Kansas City, Missouri, had been in charge of sewer facilities for Wichita's West Side sewer which extended to Twenty-fifth and Amidon and was intended to serve the area up to Thirty-seventh street. He testified if there were enough development on the land in question the sewer could be extended up into that area. The closest point of land involved in connection with accessibility to the sewer was Thirty-seventh and Amidon.

Another uncontradicted fact appeared in the record and that

is that the landowner is a farmer, not a subdivider, and the only use he has made of the land is for farming.

The city contended that in view of this last fact and the topography of the land, the highest, best, and only use of the land is for farming, but that since public announcement of the project the public is saying that the highest and best use of the land is for subdivision.

The city's witnesses set values on the land—denominated as a farm only—as follows:

Lisle Morris valued the 38.11 acres at $11,840; total value of the 80.97 acres at $32,513; total value of remainder after the taking with knowledge of the project at $48,476. On cross-examination it was elicited that Morris had in September, or prior to October 7, 1952, placed a value of $16,039 on the 38.11 acres taken.

Paul R. Brown set the value of the 38.11 acres taken at $10,965; total value of the remaining land after taking and without knowledge of the project at $20,875, and with such knowledge $43,916.

Howard C. Varner placed a value of $9,921 on 38.11 acres taken and remainder before taking at $28,870, and immediately after taking at $38,725.

It is clear there were all sorts of conflict in regard to the value of the land taken and also as to diminution or enhancement of the value of the land remaining. Therefore, we have before us the age-old question of whether there was any evidence upon which the jury could have based its verdict. As already set out herein, there was an abundance of evidence as to the value of the land taken. We have not narrated here all the elements as to value included in the testimony which appeared in the record and which could have been considered by the jury in arriving at its verdict. The jury had the witnesses before it and heard all the facts each witness testified to. We, therefore, will not disturb the general verdict.

In *Simmons v. State Highway Commission,* 178 Kan. 26, 283 P. 2d 392, where the land condemned consisted of two parcels of unimproved farm land immediately south of the city limits of Salina, a substantial portion of the land was more suitable for possible future residential development than the part cut off by a railroad easement, which was farther from the highway. In view of what was said in the Simmons case, we cannot now say that under the facts in the present case which show immediately adjacent residential develop-

ment, that it was improper for the court and jury to consider the highest and best use of the land in question was one half acre residential development. We must, however, bear in mind that there were carefully drawn and helpful special questions submitted to the jury in the Simmons case whereby it was easily determined what process had been used in arriving at the general verdict. (On determining the value of land see, also, *Reiter v. State Highway Commission,* 177 Kan. 683, 281 P. 2d 1080.) We have no quarrel with the rule set out in *Harris v. Wyandotte County Comm'rs,* 151 Kan. 946, 101 P. 2d 898, relied on by the city, to the effect that the landowner is not entitled to increased valuation by reason of a contemplated and publicly announced improvement. The Honorable John S. Dawson, speaking for the court in the Harris case, said this court has nothing to do with determining the comparative weight of conflicting oral testimony, but that it is the jury's business to dissolve various confusing opinions of values and to decide what witnesses appear to have given truthful and helpful testimony. See, also, *Federal Deposit Ins. Corp. v. Cloonan,* 169 Kan. 735, 222 P. 2d 533.

Along this same line of reasoning we are constrained to say that the introduction of the preliminary over-all plat on October 7, 1952, and a later plat of the south portion of the land not taken may have been technical error, but in view of what has been said the record does not reflect that the city made any affirmative showing that it was prejudicial and we will not disturb the judgment on that ground. (*Gilley v. Gilley,* 176 Kan. 61, 268 P. 2d 938.) We cannot agree with the city's theory that there was no evidence as to the price of one-half acre lots in the area and that the allowance of cross-examination of the city's witnesses as to such sales was error on the part of the trial court.

Evidence of the landowner and his witnesses, and admitted by the city's witness Morris, showed that such sales had taken place; that there were and had been for many years nice residential homes just across the river. The landowner's witnesses also testified that the land's highest and most advantageous use was division into one half acre tracts for construction of $15,000 to $30,000 homes.

We do not feel it necessary to narrate all the evidence regarding sales in the area because in cross-examination both parties picked out recent transactions along the river from Twenty-fifth street on north to the land in question. This type of cross-examination may

be admissible if only to test the credibility and intelligence of the expert witnesses. (*Bourgeois v. State Highway Commission,* 179 Kan. 30, 292 P. 2d 683.) The city made quite a point of the rule of law stated in *Yagel v. Kansas Gas & Electric Co.,* 131 Kan. 267, 291 Pac. 768, which, in substance, stated that evidence of price paid for a particular neighboring property in a specific or exceptional sale is not a proper way to prove market value. The sale in that case covered the price paid by the condemnor to a neighbor which is entirely different from the sales inquired about in the case at bar. The sales here were between individuals and there was nothing specific or exceptional about the sales brought out by either party in the cross-examination of the other party's witnesses. Practically all of the cases cited by counsel have had special questions submitted which in some instances not only showed technical error, but also had the added feature that the error was prejudicial. Another question raised by the city on appeal involves the closing argument by the landowner's counsel, which is the same question that arose as a result of that counsel's opening statement. The same rules applicable to the opening statement of counsel likewise are applicable to the closing argument so far as error and prejudice are concerned.

There are contentions raised by both parties regarding the refusal by the trial court to give requested instructions and that the trial court improperly instructed as to certain features. The instructions were not set out in full. Unless an instruction to which an objection is made is a clear and prejudicial misstatement of the law, it can be reviewed only when other instructions, which may or may not qualify its intent and effect, are made a part of the record in order that all may be examined together. (*State v. Leigh,* 166 Kan. 104, 109, 199 P. 2d 504.) From comparison of instructions given and actually included in the record with those requested, all points were fairly and completely covered, but as stated, since all the instructions were not abstracted fully in this record, it would avail us nothing to deviate from the rule stated in the Leigh case.

From what has been said the trial court did not err in rendering judgment on the verdict, in overruling the motion for a new trial, and from the record before us, the verdict is not excessive.

We turn now to the cross-appeal by the landowner. The first question is whether there has ever been a taking, or appropriation, by the city and we answer that question in the affirmative. As to depositing the amount of the award set by the appraisers, its only

effect would have been to give the city the right to possession. (*State Highway Commission v. Safeway Stores,* 170 Kan. 545, 228 P. 2d 208.)

The city could take the appeal and pay in the money any time, but if the money awarded by the appraisers were immediately paid in, as contended by the landowner should have been done, then the condemner would have no right of appeal from the award with a result that neither the district court nor this court could ever have acquired jurisdiction of the proceeding. (*State Highway Commission v. Safeway Stores,* supra.) A full treatment of the rule, and the reasons therefor, is to be found in *Lowrey v. State Highway Comm.,* 170 Kan. 548, 228 P. 2d 210.

Much stress is laid on the case of *Foster v. City of Augusta,* 165 Kan. 684, 690, 199 P. 2d 779, which involved a flood control project, as to what is meant by the words "taking," "take," or "taken." The court there said those words mean "the acquiring of possession and the right of possession and control of tangible property to the exclusion of the former owner. . . ." (p. 690.) (See, also, *Richert v. Board of Education of the City of Newton,* 177 Kan. 502, 280 P. 2d 596; *Linden v. Board of Park Commissioners of Wichita,* 178 Kan. 333, 285 P. 2d 1070.)

In view of what has been said herein the trial court did not err in excluding evidence of values as of the date of trial and admitting only evidence of values on October 7, 1952, the date of the "taking." As a result, the trial court did not err in its pretrial rulings wherein the two questions of value as stated were determined. All questions regarding instructions have been disposed of previously in this opinion and it is not necessary to cover the field again in the cross-appeal.

The trial court did not err in its ruling respecting the burden of proof and the reasoning for this conclusion is fairly stated in *Collins v. State Highway Comm.,* 145 Kan. 598, 66 P. 2d 409, where it is said,

"The burden of proof in condemnation proceedings is the same as in other civil cases. It rests on the party having the affirmative of the issue." (p. 600.)

See, also, *Bruna v. State Highway Comm.,* 146 Kan. 375, 378, 69 P. 2d 743.

The landowner's final contention is that since the city did not pay in the amount of the award, should it be determined that there was a taking on October 7, 1952, then the landowner is entitled to

interest on the verdict and judgment. Such a rule would be in conflict with one phase of condemnation proceedings. Had the city gone in and appropriated the land in question or ousted the landowner from possession, then interest would be allowable by the court, but since the landowner was in possession at all times and even raised wheat on the land in 1953, he cannot recover interest. (*Bruna v. State Highway Comm.*, supra, p. 378.)

Many federal authorities were cited by counsel and one recent case (*United States v. Twin City Power Co.*, 2 U. S. 2, 100 L. ed 223 [adv. op.], 76 S. Ct. 259, decided January 23, 1956) has been noted by this court but it involved flood control on a navigable stream which is not the classification of the Little Arkansas River here involved.

In *Foster v. City of Augusta*, supra, we find the following pertinent statement as to rules of federal procedure in actions in eminent domain:

"In exercising the power of eminent domain the federal government uses its own rules with respect to property and compensation. [Citations] These may or may not be the same as the rules applicable in the state where the property is situated. The states may have different rules and change them from time to time. [Citations]." (p. 690.)

There being no error the judgment of the trial court is affirmed both as to the appeal and the cross-appeal.

THIELE, J., concurs in the result.