No. 30,983.

TONY BALANO, *Appellee,* v. RALPH LeROY NAFZIGER and GEORGE W. HORD, *Appellants.*

(21 P. 2d 896.)

Opinion filed May 6, 1933.

*David F. Carson,* of Kansas City, for the appellants.

*J. Williard Haynes,* of Kansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is by the defendants from a judgment rendered against them in an action for damages, on account of an automobile collision.

The first error complained of is in rendering judgment against the

defendants when the answer of the jury to special question No. 9, together with the uncontradicted evidence, shows the plaintiff to have been guilty of contributory negligence as a matter of law, and also shows one Joe Northern to have been guilty of the negligence causing the injury.

The collision occurred April 25, 1931, on highway No. 40—sometimes called Victory highway—near Victory Junction. Three cars, including that driven by the plaintiff, were going west on this slab highway. The car driven by the defendant, George W. Hord, and owned by the defendant, Ralph LeRoy Nafziger, was going east on the same highway and the cars met about 8:45 that evening, which was somewhat cloudy. The defendants' car is referred to as a Rolls-Royce. The plaintiff's car was a Buick. Joe Northern's car, also going west, was a Chevrolet, and George Burgess was driving his car going west.

The evidence of the plaintiff tends to show that these three cars going west were near together on the north side of the slab with Burgess in the lead followed by Northern, and the plaintiff in the rear, when the defendants' car was observed coming from the west and weaving over on the north side part of the time; that Burgess turned to the north, but his left hind fender was struck by the defendants' car in passing; that defendants' car struck the left side of the Chevrolet car belonging to Northern, damaging it and turning it around facing the east, and the defendants' car then ran into plaintiff's car nearly head on.

The testimony of the defendants tended to show that the defendants' car was clear over on the south side of the slab as it approached this procession of three cars going west, that Northern with his car, the Chevrolet, was in the rear of the three going west and all at once it turned out to pass the car ahead of it and in doing so drove far over on the south side of the slab and struck the defendants' car, breaking its steering device and swerving it out of its course over in front of the plaintiff's Buick. The driver could not guide it, but put on the brakes and checked the force of the collision.

The following answers of the jury to special questions are pertinent to the matter now under consideration:

"2. Was the car driven by George Burgess followed by the Chevrolet car driven by Joe Northern and the Buick car driven by the plaintiff, in the order named? A. Yes.

"3. How close was the Chevrolet car to the car driven by Burgess at and

immediately prior to the collision described in plaintiff's petition? A. At a safe driving distance.

. . . . . . . . . . . . .

"5. At what speed was each of the cars west-bound traveling at and immediately prior to the collision described in the petition? A. (a) Burgess car, between 20 and 30 miles per hour; (b) Northern car, same; (c) plaintiff's car, same.

. . . . . . . . . . . . .

"7. How quickly could the plaintiff, Tony Balano, stop his car going at the speed he was going immediately prior to the time of the collision between his car and the car driven by the defendants? A. About twenty feet.

"8. How far away from the point of collision did the plaintiff observe the car of the defendants on the wrong side of the street? A. About 150 to 200 feet.

"9. If you find for the plaintiff, do you find that the defendant, George Hord, was guilty of negligence at and immediately before the collision between plaintiff's car and the car driven by the defendant, George Hord? State fully. A. (a) Just prior to the collision. Yes, by being on wrong side of highway No. 40 at time of impact."

Appellants direct special attention to the answer to question No. 9 and especially to the two apparently modifying features limiting the time to which the affirmative answer applies that the negligence was "Just prior to the collision," and that it consisted of being on the wrong side of the highway "at time of impact." Appellants reason that this answer is in perfect accord with the theory and testimony of the defendants, that their car was swerved over when the Northern car ran into it on the south side of the highway and broke its steering device, and swerved it across the highway to the north and into the car of the plaintiff on the north side. Appellants call to the aid of this view a part of the testimony of the witness Powell, who was riding with plaintiff at the time of the collision, where he testified as follows as to the preliminary collision between defendants' car and that of Northern, and said:

"When he hit Joe Northern's car he turned over to the south side.

"Q. And in swinging it about he got too far and came back on your side? A. I guess the impact of the car turned his car that way. Or he lost control of it or something."

The question and answer that immediately followed is as follows:

"Q. Well, answer my question. Do you mean by that when he hit Joe Northern's car he turned it over to the south side, and then in an effort to swing it up and get back, he got back on your side again? A. I don't know what happened to him further up, but he was weaving in and out and winding in and about all the way down. I could see by the lights on him."

Appellants conclude from the answer of the jury limiting the negligence to being on the north side of the highway at the time of the impact, and this evidence of Powell and others along the same line, that the claimed negligence of defendants so limited by this answer is fully accounted for by the negligence of Northern, who broke defendants' steering gear and diverted their course, and further, with such limitation in mind, they urge the contributory negligence of the plaintiff from the answers to questions 7 and 9, that the plaintiff saw the defendants' car approaching him for about 150 to 200 feet, and that he could stop his car at the speed he was going in about twenty feet. That he failed to stop his car when he saw the possible danger appellants insist is contributory negligence as a matter of law.

Of course the question of contributory negligence is a matter for the jury to determine under the instructions given by the court, and the general verdict for the plaintiff under those instructions is in effect a finding that he was not guilty of contributory negligence. But it is always proper for both the trial court and this court to find otherwise if it can be found as a matter of law notwithstanding the general verdict and the answers to special questions. In so considering the answers and the evidence we think it is necessary to read in connection with the time limitation put on the negligence in the answer to question No. 9 the answer to the question just preceding it, where it is found that the plaintiff observed the defendants' car on the wrong side of the highway for about 150 to 200 feet. One of the limitations in question No. 9 was instantaneous, the other was exceedingly indefinite, "just prior," and might have included considerable or all of the time required to travel the 150 or 200 feet.

It is not suggested how the plaintiff could have avoided the collision by stopping his car when he saw the defendants' car coming on the wrong side. Of course a head-on impact would not be so bad naturally, if one car was not moving. Burgess in the first car hastened and turned to the right and yet his left hind fender was struck, he says. His hastening and turning to the right undoubtedly was better for him than stopping would have been. Plaintiff had a right to presume that the party approaching on the wrong side of the road would get on the right side in time to avoid a collision. (*McComas v. Clements*, post, p. 681, 21 P. 2d 895.)

Unless the evidence shows contributory negligence of such a char-

acter that would not cause reasonable minds to reach different conclusions thereon, it cannot be contributory negligence as a matter of law. And such is the exact situation here. Very different plans might be suggested by different persons in the situation as described by the different witnesses. Neither do the answers furnish an undebatable solution of the difficulty confronting plaintiff when he observed the approaching car on the wrong side of the road.

In the case of *Insurance Co. v. Railroad Co.*, 110 Kan. 4, 202 Pac. 582, where at a railroad crossing sparks and cinders from a passing engine fell on a covered truck loaded with furniture like a shower of rain or hail, and after the train had passed, the driver went on for some distance before fire was discovered, whereas by looking the truck over carefully at the time the fire might have been discovered and extinguished, and it was held:

". . . that the question of contributory negligence was not one of law, but of fact, for the reason that it does not appear that reasonable men, acting as the triers of fact, would find, without any reasonable probability of difference in their views, that the persons in charge of the truck knew and appreciated the danger, or that ordinarily prudent men, under the same circumstances, would have acquired such knowledge and appreciation." (Syl. ¶ 2.)

"When the facts relating to contributory negligence are of such character that reasonable minds might reach different conclusions thereon, it is a question of fact for the jury to determine." (*Keir v. Trager,* 134 Kan. 505, syl. ¶ 2, 7 P. 2d 49.)

The answers of the jury completely dispose of the theory of the defendants as to Northern, with the Chevrolet, being the last one in the procession and turning out to pass the car ahead of him and thus crossing over to the south side of the road. The jury found the order in the procession to be otherwise. This makes it impossible to follow the suggestion of the appellants by shifting all or part of the negligence over on Northern.

Appellants urgently object to instruction No. 17, which is somewhat out of the ordinary because a third party is introduced by the defendants into the question of negligence, viz., Northern with his Chevrolet car. We do not think it in any way makes the defendants liable for the negligence of Northern if it should be found that they were each separately found to be guilty of negligence. Instruction No. 17 is as follows:

"If you find from the evidence that the plaintiff's injuries, if any, were wholly and solely caused by the negligence or acts of one Joe Northern, with-

out contributing negligence on the part of the defendants in this case, you will return a verdict for the defendants. But the mere fact, if proven, that the said Joe Northern was guilty of negligence which contributed in causing the plaintiff's injuries, if any, would not bar plaintiff's recovery if it is further proven by the preponderance of the evidence that the defendants' negligence also contributed as a proximate cause to plaintiff's injuries, and that plaintiff was not guilty of contributory negligence."

Appellants also criticize the setting out in the first instruction of the five allegations of negligence contained in the petition of plaintiff as giving them more prominence than usual or should properly be given to such allegations. They are presumably copied from the petition at length and not given in the language of the court. We see no harm or prejudice in using the language of the petition in telling the jury the nature of the issues to be determined by it, provided the allegations quoted are supported by some evidence and are in plain and simple language capable of being easily and readily understood. (*Williamson v. Oil and Gas Co.*, 94 Kan. 238, 146 Pac. 316.)

Serious objection is made to the extravagant statements made by the plaintiff in his testimony which possibly magnified and exaggerated some matters in the giving of his testimony, especially concerning the injuries received by him. The description of such by his attending physician made them not nearly so serious. This is criticized as plain perjury that should result in a reversal of the judgment. Of course we cannot approve the giving of any testimony bordering on perjury, but no two witnesses see, feel or express things exactly alike, and we have no positive standard of accuracy in things and circumstances of this character, and for this very reason the jury is usually instructed, as it was in this case, that it is the judge of the weight of the evidence and the credibility of the witnesses.

Two other parts of the testimony are here criticized. A witness seems to have related that he heard Hord, one of the defendants, say to an occupant of his car, after the collision, something to the effect of taking out the baggage and letting the car burn. It would appear to be wholly immaterial and inadmissible, but we fail to see how defendants could be prejudiced. It might be very serious in an action between the owner and an insurance carrier, but surely not so here. The other was a picture of plaintiff's car taken some time after the collision with strips of iron and a bumper piled on the

running board. Of course it should not have been taken with these extras, but they could not affect the result seriously.

Is the verdict excessive? Is it such that shocks the conscience of the court? Nothing thus far has been said in this opinion as to the extent of the injury to plaintiff. The jury allowed the plaintiff $2,068 for permanent disability and $279 for pain and suffering and another item for hospital, making a total of $3,000, but the court eliminated the last item and rendered judgment for $2,347. The jury found he sustained injuries to his lungs and back. The attending physician testified that the plaintiff was under his care in the hospital for seven days—the injuries being to his lungs, his back and one of his legs. That of the leg consisted of a sprain, bruise and contusion. There were no dislocations or fractures. The principal bleeding was from injury to the lung. He had a badly sprained back and is still being treated for it. After the first few days he had passed the danger of getting an acute infection, having recovered from the immediate effect of the injury to the lungs. He still coughs some and is still suffering. He cannot say whether or not he has a permanent injury. He thinks his lung is permanently handicapped; doesn't think he could stand the strain of pneumonia or tuberculosis. His sprained back will never permit him to lift heavy weights or regularly perform manual labor.

Both parties have helpfully cited cases where allowances were considered and held to be either excessive or not excessive. It is not necessary to enumerate them here or compare the amounts allowed and the extent of the injuries and incapacity therefrom with those facts in this case, but after a thorough examination of all such cases cited and many others, we are satisfied that the amount here allowed for the injuries and permanent disability sustained and the suffering and pain endured is not excessive in comparison with allowances approved for similar injuries and disabilities.

The judgment is affirmed.