No. 34,981

ABNER D. DUNCAN, *Appellee,* v. GEORGE BRANSON, *Appellant.*

(110 P. 2d 789)

Opinion filed March 8, 1941.

*Albert Faulconer, Kirke W. Dale* and *Donald Hickman,* all of Arkansas City, for the appellant.

*W. E. Broadie,* of Winfield, *Rudolph Barta,* of Salina, and *Tom L. Irby,* of Ponca City, Okla., for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages for injuries alleged to have been incurred when an automobile being driven by plaintiff collided with one being driven by defendant. Judgment was for the plaintiff. Defendant appeals.

The automobile accident out of which this action arose occurred October 28, 1936, at about 7:20 p. m. on U. S. highway 160 in Cowley county, about seven miles east of the city of Winfield. The road at the point of collision is improved with gravel surfacing and is part of a main traveled highway. The road runs east and west at the point of collision and at that time plaintiff was driving east and defendant was driving west. The width of the traveled portion of the highway at that point was thirty-two feet and yet for some reason plaintiff's Model A Ford and defendant's Ford V8 became entangled in passing.

Plaintiff filed his petition in the first instance against both defendant Branson, appellant herein, and The First National Bank of Winfield. The case was dismissed as to the bank and proceeded to trial against Branson alone. The petition alleged the accident was caused by defendant's negligence in being intoxicated and in driving at a high and unlawful rate of speed on the wrong side of the road; and that plaintiff had been severely injured. The particulars of the allegations of negligence will be noted later.

Defendant answered denying plaintiff's allegations as to defendant's negligence and filed his cross petition, in which he alleged that it was plaintiff who was on the wrong side of the road and was driving at an unlawful rate of speed. Defendant demanded that he be allowed compensation for his own injuries. The case was tried to a jury, who found for plaintiff in the sum of $5,000 and answered certain special questions. After the trial court approved this verdict and rendered judgment, defendant perfected this appeal in which he specifies certain trial errors.

The first argument of defendant is that his motion for judgment on the answers to special questions, notwithstanding the general verdict, should have been sustained.

Question and answer No. 8 were as follows:

"Q. Under the instructions of the court, state what you find to be the proximate cause of the collision. A. The defendant Branson had been drinking and was driving over the center of highway 160 at an unlawful speed."

Defendant points out first that the above answer acquitted him of all negligence charged except that specified in it. This is undoubtedly the rule.

The defendant next argues that what the jury found to be the proximate cause of the collision was not charged in the petition. If this were true the trial court erred in not sustaining the motion of defendant for judgment on the special findings. A consideration of this argument requires an examination of the petition. It will be noted that the jury found there were three proximate causes.

With reference to the first one, that is, that defendant had been drinking, defendant points out that the allegation of the petition was that Branson was driving his car while in an intoxicated condition such as to render him incapable of using his faculties. Defendant argues that the finding made by the jury did not sustain the above allegation and in effect acquitted him of the charge in the petition with reference to negligence. We are not called upon

to state what force this argument or finding might have if the allegation was the only one in the finding and petition. As it is, we must consider that matter along with the other two causes.

It will be noted that the next cause found was that defendant was driving over the center of highway 160. The defendant points out two or three places in the petition where the charge was made as to the defendant being on the wrong side of the road and argues that the petition really charges that defendant's car was completely over in the wrong or left-hand traffic lane and that the above finding acquits him of that. We have examined the petition in this respect and have concluded that the petition is not subject to such a construction. The car of defendant belonged on the right-hand side of the highway when a car was approaching from the opposite direction. It was not necessary that the entire car should be out of place. Be it ever so small a part over on the left-hand side, it would be enough to render the defendant liable if such was the proximate cause of the collision.

Defendant next points out that one of the proximate causes of the collision was that he was driving at an unlawful rate of speed. He then refers to the petition, where it was alleged that—

"Defendants . . . approached plaintiff at a high, wanton, dangerous and reckless rate of speed, to wit: 75 miles an hour."

Defendant argues that because the jury did not find that he was driving at the rate of 75 miles an hour he was acquitted of the charge of excessive speed as a ground for recovery. At the time this collision occurred the law provided that—

"No person shall operate a motor vehicle . . . at a rate of speed greater than is reasonable and proper, having regard for the traffic . . . nor at a rate of speed such as to endanger the life or limb of any person." (G. S. 1935, 8-122.)

The jury was properly instructed as to this statute. The fact that the petition charged that defendant was driving at a specified rate of speed does not mean that a less rate of speed was not improper and hence unlawful. For all that appears from this record, the jury might have believed that defendant was traveling at a greater rate of speed than 75 miles per hour. This is covered by the finding of unlawful speed.

Defendant next argues that the trial court erred in denying his request that the jury be directed to make its answers to certain ques-

tions definite, certain and responsive and in overruling his motion to set aside these answers.

Question and answer No. 2 were as follows:

"Q. At the time Duncan could first actually see the headlights of the Branson car, how close to the center of the road was Duncan driving his car? A. About 2½ to 3 feet south of the center of highway 160."

Defendant argues that this answer should have been set aside because the testimony of witness was to the effect that the Duncan car was about one-third foot south of the center. It is difficult to see how this answer was prejudicial to defendant. If the car of plaintiff was on the south or right-hand side by four inches or two feet it was still in its proper place.

Question and answer No. 3 were as follows:

"Q. From the time Duncan could first actually see the headlights on the Branson car up to the instant of the collision, did the Duncan car change its course of travel, and if so, what change in its course of travel did the Duncan car make? A. No, it did not change its course of travel."

Defendant argues that this answer should have been set aside because he testified that plaintiff swerved all of a sudden to the left, and plaintiff did not deny this. There was circumstantial evidence to support this finding even though defendant testified to the opposite effect. The jury was not obliged to believe the testimony of defendant on this point.

Question and answer No. 4 were as follows:

"Q. After Duncan actually saw the headlights of the Branson car did Duncan do anything to avoid the collision other than to lift his foot from the accelerator? A. No, he did not have time."

He argues that this question could have been answered by the word "No" and that it was improper for the jury to add the explanatory words "He did not have time." He argues that the explanatory statement evinces a determination on the part of the jury to bolster its answer and shows that the jury did not approach the consideration of the case with an open mind. The testimony of plaintiff on this point was as follows:

"Q. How long was it, do you think, after you saw the car pass the intersection before it struck you? A. It wasn't more than a second of time. I hadn't yet figured he was going to strike me until he just plowed right into me."

Hence it appears that the finding was supported by the evidence if the jury saw fit to believe the testimony of the plaintiff. The ques-

tion could have been answered by the categorical statement "No," but a jury cannot be held to the strict rule as to the use of language to which a more highly trained person would be held.

Defendant complains of the answer to question No. 5. This question did not require an answer unless question No. 4 was answered in the affirmative. The jury, instead of leaving this question unanswered, wrote in the statement "No. 4 is not answered in the affirmative." Defendant argues that this shows too much zeal for the plaintiff on the part of the jury. We prefer the view that this answer indicated a painstaking determination on the part of the jury to answer every question as nearly correctly as possible.

Question and answer No. 6 were as follows:

"Q. At what point with reference to the center of the road did the cars actually collide? A. The center of collision was south of the center of the highway."

Defendant argues that this answer should have been set aside because of the use of the words "center of collision." The only fact which defendant was entitled to know was whether the collision took place on the north or south side of the center of the highway. This answer settled that point without any doubt.

Question and answer No. 7 were as follows:

"Q. Could Duncan have avoided the collision by turning to the right after it became apparent or should have become apparent to him that he was in a position of peril? A. No, not after he knew he was in a position of peril."

Defendant argues that this answer should have been set aside because it could have been answered with a simple "yes" or "no" and the jury added the words "not after he knew he was in a position of peril." He also argues that the answer was not sustained by the evidence. As to the first argument, the language added to which defendant objects adds nothing to the meaning of the answer nor does it take anything away. It is taken from the language used in the question and appears to be the result of careful attention to details on the part of the jury. As to the argument that the finding was not sustained by the evidence, the testimony of plaintiff that has already been quoted in this opinion was sufficient to sustain this finding.

Question and answer No. 9 were as follows:

"Q. At what point with reference to the center of the highway was the dark spot in the road referred to in the evidence as being under or near the Branson car after the Branson car came to rest? A. The south edge of the spot was about eighteen inches north of the center of highway No. 160."

Defendant argues that all the evidence in the case was to the effect that the south edge of this spot was from three to five feet north of the center of the highway. It is not clear from this record just what bearing on the ultimate outcome of the case the location of this spot had. At any rate, it appears that there was some substantial evidence to sustain the answer.

Defendant next argues that the trial court erred in giving certain instructions to the jury and in refusing to give certain instructions that were requested by the defendant.

The first one of these instructions to which defendant takes exception is No. 7. That instruction was as follows:

"It was also the law in the state of Kansas at the time of this accident that it was unlawful for any person under the influence of intoxicating liquor to drive, operate or have charge of the power or guidance of any automobile upon any public road or highway within the state of Kansas, and that the taking or the use of any intoxicating liquor by the person driving, operating or in charge of the power and guidance of any automobile within a reasonable time prior to the taking charge of the guidance of such vehicle shall be construed as prima facie evidence that such person is under the influence thereof."

Defendant points out the allegation in the petition that he was so intoxicated as to render him incapable of using his faculties, and argues that such an allegation did not raise an issue which justified the giving of such an instruction. This argument is not good for the reason that this court will not draw a fine distinction as to when the driver of an automobile is so intoxicated as to have lost control of his faculties. If he was so intoxicated that his condition caused him to be half a second later in shifting his foot from the accelerator to the brake than he would have been if sober, and this half second was the proximate cause of the collision, the instruction would have been proper. We note further in this connection that two other proximate causes were found by the jury, either one of which was sufficient to fix liability. Instruction No. 7 was not prejudicial to defendant.

Defendant next argues that the trial court erred in giving instruction No. 6. This instruction dealt with the rules of the road. The portion of it to which defendant directs his argument stated that the speed of an automobile approaching an intersection outside a village or city should be reduced to 15 miles per hour. The instruction was given because the defendant had passed an intersection a short distance before he reached the scene of the collision.

In connection with this instruction defendant points out instruction No. 8 in which the jury was instructed that—

"Anyone disregarding these usual and ordinary provisions of the law in the use of the highways then existing would be negligent. And if injury is caused to another by the negligence of one then the other person would be entitled to recover damages."

He argues that in effect these two instructions told the jury to find defendant liable if he was driving faster than 15 miles at the intersection regardless of whether the speed was the proximate cause of the collision. This argument is not good for the reason that the jury found that the speed, the drinking, and being on the wrong side of the road, were all proximate causes. Furthermore, the court in other instructions states the law of proximate cause correctly. Instructions must be considered and construed as a whole. (See *Jacobs v. Hobson,* 148 Kan. 107, 79 P. 2d 861.)

The argument of defendant as to the instructions requested by defendant have been examined and we have concluded that the law of the case was covered by the instructions given.

Defendant next argues that plaintiff was guilty of contributory negligence so as to preclude recovery, and his demurrer to the plaintiff's evidence should have been sustained. In the consideration of this argument we must give the evidence the most favorable consideration possible from the standpoint of the plaintiff. The plaintiff testified that he saw the light of the defendant's car for the first time when it was about 450 feet east of him; that he was on the south side of the highway going about 25 miles an hour; that it looked as if it might be going to turn south and the next thing he knew it crashed into him; that he had not figured defendant was going to strike him until he "plowed right into him." There was evidence to the effect that defendant was driving on the wrong side of the highway. The foregoing was sufficient to make the question of whether plaintiff was guilty of contributory negligence one for the jury. The plaintiff was entitled to believe that the defendant would get back and remain on his own side of the highway as the cars approached each other. Had the car of defendant been on the proper side of the road at the time they met there would have been no collision. (See *Balano v. Nafziger,* 137 Kan. 513, 21 P. 2d 896; also, *Clark v. Southwestern Greyhound Lines,* 148 Kan. 155, 79 P. 2d 906; also, *McComas v. Clements,* 137 Kan. 681, 21 P. 2d 895.)

This brings us to the argument of defendant that the verdict was excessive and rendered under the influence of passion and prejudice. Defendant argues that the verdict is so excessive that it cannot be cured by a remittitur, but asks if we do not agree with this that a remittitur in a reasonable amount be ordered. The jury found for plaintiff in the sum of $5,000. Was this so excessive as to show prejudice? He was in the hospital two days after the injury; had a hospital bill of $17 and a doctor's bill running over several months of about $100; and that he had earned $600 to $700 a year doing farm work; was unable to do a hard day's work after the accident. There was some evidence as to his general bad health and weakened condition before the injury, and also as to his condition after the injury but not by the same doctors, that is, the doctor who testified as to his condition after the injury had not examined him before the injury. The evidence was that after the injury he had chronic myocarditis due to infection or glandular disturbance and he also had arthritis due to hemorrhoids, duct inflammation, crypts, and in addition that he carried a chronic gall-bladder infection. There was no satisfactory proof, however, as to how much of this condition was caused by the injury and how much was due to his condition before the injury. The award of a jury for bodily injuries will not be modified or set aside unless it is so great under all the surrounding facts and circumstances as to shock the conscience of this court. (See *Fenn v. Kansas Gas & Electric Co.*, 118 Kan. 131, 234 Pac. 77.) This court has, however, examined the record and ordered remittiturs and sometimes a new trial on account of the amount of a verdict. (See *Dobson v. Baxter Chat Co.*, 148 Kan. 750, 85 P. 2d 1.)

In this case after careful consideration we have concluded that the proof of damages falls so far short of establishing that plaintiff was damaged in the amount of $5,000 that the verdict shocks the conscience of the court and should be reduced by $2,000.

We have concluded that such an order should be made in the interest of justice.

If plaintiff will remit $2,000 of the judgment and so advise the clerk of this court within ten days after the filing of this opinion the judgment of the court will be affirmed; otherwise it will be reversed for a new trial. It is so ordered.