No. 37,685

RUTH BRITTAIN, *Appellee,* v. WICHITA FORWARDING COMPANY, ED MORAN, EARL WILLIAMS and THE NATIONAL MUTUAL CASUALTY COMPANY, *Appellants.*

(211 P. 2d 77)

Opinion filed November 12, 1949.

*I. H. Stearns,* of Wichita, argued the cause, and *E. P. Villepigue,* of Wichita, was with him on the briefs for the appellants.

*Myron S. Steere,* of Ottawa, argued the cause, and *Eugene G. Coombs, Paul V. Smith,* and *Douglas E. Shay,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by Ruth Brittain, a widow, to recover damages for herself and minor children resulting from the alleged wrongful death of her husband in a collision of motor vehicles. The plaintiff prevailed and defendants have appealed.

The defendants were Earl Williams, owner of the semitrailer truck involved; Wichita Forwarding Company, a corporation, the lessee and operator of the truck, which was engaged as a common motor carrier under a Kansas motor permit; Ed Moran, driver of the truck; and The National Mutual Casualty Company, the insurance carrier.

The death occurred as the result of a collision when H. E. Brittain drove his 1941 Chevrolet coach into the rear end of the truck which was alleged to have been unlawfully parked facing south on the west side of highways U. S. 59 and U. S. 50 south, at a point approximately five miles north of the city of Ottawa, without lights thereon or flares and other warning signals required by law.

The deceased was approximately fifty-five years of age and in good health. His average earnings were approximately $300 per month. The jury returned a general verdict for plaintiff and against the defendants in the sum of $3,500 and answered special questions. Appellants assert the trial court erred in overruling (1) their demurrer to appellee's evidence; (2) their motion for a directed verdict; (3) their motion to set aside certain findings of the jury on the ground the general verdict and such findings of negligence were based purely on inference and conjecture; (4) their motion for judgment on the ground the evidence showed deceased was guilty of negligence which caused the accident; and (5) in overruling their motion *non obstante veredicto.*

Although there was one disinterested eyewitness to the accident within seventy-five feet appellee did not subpoena him. He testified on behalf of appellants. The deceased and the driver of the truck were alone in their respective vehicles. The accident occurred between 9:30 and 9:45 at night. The night was clear. Appellee does not contend there was evidence of any vehicle approaching

from the opposite direction. Appellants' evidence was no such vehicle was approaching.

In the view we take of this appeal we find it necessary to treat only appellants' last contention. The specific allegations of the truck driver's negligence were:

"(a) In stopping or parking said truck upon the improved and main traveled part of said highway in the direct way of automobiles traveling in the direction of the automobile which the said H. E. Brittain was driving;

"(b) In stopping or parking said truck upon said highway in the night-time without lights burning, without flares, and without any other mode of warning being displayed;

"(c) In failing to display lighted lamps, flares or other illuminating devices required by law on said truck while it was being operated on said highway in the night-time."

In answer to special questions the jury found:

"1. Q. Do you find the defendants, Ed Moran and The Wichita Forwarding Company, guilty of negligence? A. Yes.

"2. Q. If you answered the foregoing question in the affirmative, then state in what such negligence consisted? A. Stopped on the highway without proper precautions.

"3. Q. Do you find the deceased H. E. Brittain guilty of negligence which contributed to his death? A. No.

"4. Q. If you answered the foregoing question in the affirmative, then state in what such negligence consisted. A. ——.

"5. Q. Do you find that the Defendants' truck was standing still on the highway when the collision occurred? A. Yes.

"6. Q. Were the lights burning on the back of the truck at the time of the collision? A. Doubtful.

"7. Q. State whether or not there were any cars coming from the south whose lights blinded said deceased immediately prior to the collision. A. No.

"8. Q. State the rate of speed at which said deceased was traveling at the time of the collision. A. 55 M.P.H."

The accident occurred March 28, 1947. The pertinent statute at that time (since amended in some particulars by chapter 106, laws 1949) was G. S. 1947 Supp. 8-5,108. Insofar as material here it provided:

"(a) No person shall operate any motor truck upon a highway outside of a business or residence district at any time from a half hour after sunset to a half hour before sunrise unless there shall be carried in such vehicle a sufficient number of flares, not less than three, or electric lanterns or other signals capable of continuously producing three warning lights each visible from a distance of at least 500 feet for a period of at least eight hours, except that a motor vehicle transporting flammables may carry red reflectors in place of the other signals above mentioned. Every such flare, lantern, signal, or reflector shall be of a type approved by the commissioner, and he shall publish lists of

those devices which he has approved as adequate for the purposes of this section. (b) *Whenever any motor truck and its lighting equipment are disabled* during the period when lighted lamps must be displayed on vehicles and such motor truck cannot immediately be removed from the main traveled portion of a highway outside of a business or residence district, the driver or other person in charge of such vehicle *shall cause such flares, lanterns,* or other signals to be lighted and placed upon the highway, one at a distance of approximately 100 feet in advance of such vehicle, one at a distance of approximately 100 feet to the rear of the vehicle, and the third upon the roadway side of the vehicle. . . ." (Our italics.) ·

This statute was interpreted in *Rasing v. Healzer,* 157 Kan. 516, 142 P. 2d 832. We there said:

"It should be noted the section just quoted requires flares, lanterns or other signals to be put out 'whenever any motor truck and its lighting equipment are disabled' during the time when lighted lamps are necessary and when such motor truck cannot immediately be removed from the highway. It should also be noted that a fair interpretation of the section requires the conclusion that the truck must be parked or stopped to necessitate the putting out of flares, etc. *It must further be noted such action is necessary only when the lighting equipment is disabled or for some other reason is turned off and not lighted."* (p. 525.) (Our italics.)

The burden, of course, rested on appellee to establish the alleged negligence that the truck was not lighted at the time of the accident. For the purpose of obtaining a ruling on the motion *non obstante,* which we are presently considering, the findings of the jury are conceded to be supported by the evidence. (*Eldredge v. Sargent,* 150 Kan. 824, 829, 96 P. 2d 870; *Rasing v. Healzer,* supra.) For present purposes we must, therefore, consider the findings as they stand.

Appellants assert the rule to be that answer No. 6 does not establish the negligence charge that the truck was not lighted at the time of the accident. They insist the answer, "Doubtful," must be construed against the party upon whom the burden rested to show the truck was not lighted. The contention is good. (*Schaefer v. Interurban Railway Co.,* 104 Kan. 394, 400, 179 Pac. 323; *Steele v. Woodmen of the World,* 115 Kan. 159, 222 Pac. 76.) In the Steele case it was said:

"An expression of doubt is not tantamount to a finding of fact. Doubt indicates an uncertainty, a lack of sufficient information upon which to reach a conclusion. (19 C. J. 447.)" (p. 166.)

The answer to question No. 6 must be interpreted as "Yes." It follows the specific charge of negligence that the truck was not lighted was not established. As previously indicated in the Rasing

case, *supra,* flares are not required when the truck is properly lighted.

Answers to questions Nos. 1 and 2 are general in character. They are refuted by the specific and detailed finding No. 6. General findings must yield to detailed findings on the same subject. (*Eldredge v. Sargent,* supra, p. 833, and cases there cited.)

Counsel for appellee argue strenuously a deceased is favored with the presumption of having exercised reasonable care for his own safety. We need not discuss that rule here. It could become material only on the question of negligence of the *deceased.* The first bar to appellee's recovery is her failure to prove the alleged negligence of appellants. Until she has established the alleged negligence of the appellants lack of negligence on the part of the deceased, assuming it be a fact, is immaterial.

The judgment is reversed with directions to enter judgment for appellants.