No. 38,513

DONALD KREY, a minor by his father and next friend, Arcey Krey, *Appellee*, v. FRANCIS J. SCHMIDT, HAROLD POPP, doing business as H. M. POPP TRUCK LINE OF HAYS, KANSAS, and COMMERCIAL STANDARD INSURANCE CO., OF FORT WORTH, TEXAS, *Appellants*.

(240 P. 2d 153)

Opinion filed January 26, 1952.

*Homer V. Gooing,* of Wichita, argued the cause, and *Howard T. Fleeson, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk,* and *George W. Holland,* all of Wichita, and *S. R. Blackburn* and *Tudor W. Hampton,* both of Great Bend, were with him on the briefs for the appellants.

*Evart Garvin,* of St. John, argued the cause, and *Robert Garvin* and *Morris Garvin,* both of St. John, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: Plaintiff, a minor, instituted this action by his father and next friend to recover damages for personal injuries sustained in a collision between two motor vehicles. Plaintiff prevailed and the defendants appeal.

Appellee was Donald Krey, the driver of a Ford automobile. He was accompanied by another minor, Leo Hall. Appellants are Francis J. Schmidt, the driver of the other vehicle, Harold Popp, doing business as the H. M. Popp Truck Line of Hays, Kansas, and Commercial Standard Insurance Company, his insurance carrier.

The collision occurred on a portion of appellee's side of the road as the appellant driver of an oil truck was endeavoring to get back onto his proper side of the road, after having attempted to pass two other vehicles, which were in front of the appellant driver and on their proper side of the road.

Appellants specify as error the overruling (1) of their joint demurrer to appellee's evidence and (2) certain posttrial motions. Appellants' demurrer was interposed on the ground appellee's evidence disclosed he was guilty of contributory negligence as a matter of law.

The ruling on the demurrer requires an examination of material evidence adduced on behalf of appellee. Only such portions thereof need be reviewed as are necessary to determine whether the demurrer was properly overruled. Those facts, in substance, were:

Appellee and his companion, Leo Hall, were respectively sixteen and fourteen years of age at the time of the accident on May 24, 1949; they used their fathers' cars interchangeably to drive to and from high school at Great Bend; Leo Hall was not old enough to drive and appellee did all the driving; on the day in question they used the Hall car, a 1946 Ford; they left Great Bend for home at about 3:00 p. m.; it was a clear day; the blacktop pavement was twenty-four feet wide and dry; there were shoulders approximately five or six feet wide on each side of the pavement; the road was perfectly straight and flat for about one half mile along the part of the road here involved; the center line on the highway was painted white; the road ran in a northwesterly and southeasterly direction; the boys were traveling southeast, in the midddle of their proper side of the road, at a speed of forty-five to fifty miles per hour; they did not change the speed of the car or alter their position in the middle of their side of the road until the collision occurred.

Evidence adduced on behalf of appellee by Eric Fischer, who was the driver of the first vehicle the appellant driver attempted to pass, in substance, was:

He was rounding a curve from the southeast at about twenty-five or thirty miles per hour; (the petition alleged the collision occurred about 450 feet northwest of the curve) he noticed a car in front of him on his, the north, side of the road going northwest; he coasted along until he was about 100 or 150 feet behind that vehicle; he then saw a car coming from the northwest; he slowed down some more; he looked in the rear-vision mirror and saw a semitrailer making the curve behind him; he thought everything was all right and didn't pay a lot of attention to it; he next heard a horn and in perhaps a second or two he heard a crash; he was driving so that his left car wheels were about three or four feet from the white center stripe; when he looked in his rear-vision

mirror the semitrailer was traveling about thirty or forty miles per hour; when he heard the horn he straightened up and saw the cab of the trailer right at his side; he then turned his course to the right, that is, towards the north; an examination of his car showed the semitrailer had struck the left rear fender and axle of his car.

Appellee's witness, Dee Doughty, testified, in substance: He was a state highway trooper; he was notified of the accident at 3:20 p. m. and investigated it; (his testimony concerning the width of the pavement and shoulders was as previously stated) part of the semitrailer was across the center line, which was painted white; the skidmarks of appellants' vehicle were about eight feet from the south edge of the pavement; the extreme left front fender of appellee's car contacted appellants' truck on the side of the front fender and then slid back and struck the dual tires of the tractor; the Kincaid vehicle which was traveling in front of the Fischer car was not involved in the impact; he had a conversation with the appellant driver who told him they had a bad wreck and that one of the boys was badly hurt; the appellant driver said the Fischer car had slowed down behind another vehicle, which was traveling at a slow speed; he saw the appellee vehicle approaching and decided his only choice was to try to pass the vehicles; the driver said he sounded his air horn and tried to get as close to the Fischer vehicle as possible to prevent hitting the oncoming vehicle; he was not sure whether the appellant driver had told him appellee could have passed him safely by driving onto the shoulder but he did remember the driver told him appellee could have gotten by safely and there would have been no accident "if the boy had given over."

The highway trooper further testified, in substance:

The Ford was six feet wide; appellants' vehicle was eight feet wide; the point of impact of the two vehicles was eight feet north of the south edge of the pavement; he did not remember whether the appellant driver had told him when he first noticed the appellee car it was 600 feet away; when asked whether he had made some notes at the time of his investigation of the accident he stated he had prepared his regular field report while at the scene of the accident and one of the items thereof was:

" 'Vehicle No. 2 traveling south at high speed apparently did not see Vehicle No. 1 until too late to avoid impact'."

We come now to the particular allegation of *appellee's petition* relative to the manner in which the collision occurred and to the testimony of his companion, Leo Hall. The petition, in substance,

alleged when appellee reached the point of collision he was about to pass a vehicle driven by Mr. Kincaid, which was pulling a horse-drawn mower; immediately behind Kincaid was the Fischer car; both of those vehicles were traveling slowly on the north side of the road; appellants' truck suddenly came across the center line from behind Fischer's car and into appellee's lane of travel; the truck sideswiped the left or south side of the Fischer car and struck appellee's car.

Donald Krey, appellee and driver of the car, testified he did not remember anything about the collision.

The testimony of Leo Hall, appellee's companion, was, in substance: They had not observed appellant's truck when it made the turn onto the straightaway; he did not see the truck on his side of the road until immediately before the collision; they were traveling on their side of the road and about two feet from the white center line; they were traveling in about the middle of their side; they continued on a direct course on the highway without turning in either direction; they were traveling about fifty miles an hour; they were looking ahead all the time; the first time he saw the truck was when it came across the road; they were then only about five feet away; the physical examination of the cars disclosed appellee's front left fender first made contact with the left front fender of appellant's tractor; he conceded it was impossible for appellee's car to have first contacted appellants' truck in that manner if the collision occurred immediately after appellants' truck crossed the center line in a southwesterly direction and thereafter stated they might have been a little farther back than five feet for the reason that appellants' tractor had turned in a northwesterly direction before the collision; the Fischer car had been traveling in a northwesterly direction and in about the middle of his side of the road; Fischer pulled over to his right to give appellants' truck a little more room; after the tractor had gotten into an angle to the northwest they hit the back wheels of the tractor; it would have been necessary for Donald Krey (appellee) to have swerved approximately six inches to a foot to the right, not quite off the pavement, to have avoided the collision; they were not expecting the truck to come across the center and there was not enough time to do anything about it after they saw the truck cross the center line; their car could have been turned aside in the same length of time it required for the tractor to be turned; there was a wide shoulder to the right of the paved surface; the truck came across the center

line about two and one-half feet; that left approximately nine and one-half feet of pavement to the south of the truck, which could have been used to avoid colliding with the truck.

Arcey Krey, appellee's father, in substance, testified: He measured the skidmarks on the day of the accident; they disclosed skidmarks of the dual tires thirty-eight inches south of the white center line.

Appellants argue the physical and undisputed facts pertaining to the first point of contact of the vehicles disclose the accident could not have occurred in the manner related by Leo Hall, that is, immediately after the appellants' vehicle crossed the center line to the southwest. That contention must be conceded. The Hall boy, however, changed his testimony and stated appellee's car struck the tractor after the tractor had turned at an angle to the northwest. In answer to such changed testimony appellants assert the altered testimony makes it clear that if appellee were maintaining a lookout, as it is claimed, he must have seen the truck while it was crossing onto his side of the road, while it was attempting to pass the Fischer car and during the time the Fischer car and the truck driver were both swinging their vehicles towards the north. Appellants further emphasize the following admitted facts, to wit:

Appellee's car could have been turned to the right as easily and as quickly as appellants' oil truck was turned to its right; approximately nine or nine and one-half feet of the pavement remained unobstructed to the south of the truck; appellee did not slacken the speed of his car and made no attempt whatever to turn it in order to avoid the collision and that the turning of appellee's car about six inches or a foot to the right would have avoided the collision.

Counsel for appellants, of course, must, and do concede the appellant driver was guilty of negligence notwithstanding the fact that the Fischer vehicle immediately ahead of him had slowed up materially and compelled him to decide whether he would strike that vehicle or attempt to pass around it. They contend, however, such negligence does not absolve appellee of contributory negligence.

It is true that after a person has, or in the exercise of reasonable diligence should have, knowledge of another's negligence the former is bound to use the care of an ordinarily prudent person to help avoid injury. (*Keir v. Trager*, 134 Kan. 505, 507, 7 P. 2d 49; *Jones v. McCullough*, 148 Kan. 561, 565-566, 83 P. 2d 669; *DeGraw v. Kansas City & Leavenworth Transportation Co.*, 170 Kan. 713, 228 P. 2d 527.)

In the DeGraw case we held:

"While as a general rule it may be said that a driver, absent knowledge to the contrary, may assume that an approaching vehicle will obey the rules of the road and thus get over and stay on its own side of the road, yet he will not be permitted to act on the assumption where the factual basis for it has disappeared, as for example, where it appears that the driver of such vehicle on the wrong side of the road either will not or cannot turn back to his own side.

"The purpose and object of rules of the road are to avoid accidents, but one is not justified in asserting his right to use his side of the road when, by not doing so, he can avoid a collision. The fact a motorist is on the proper side of the road does not entitle him to make an unreasonable use thereof nor relieve him of the duty to exercise due care to avoid injury to others, including those who may be on the wrong side of the road." (Syl. ¶ 4, 5.)

Although there are some rather strong inferences in the instant case which might be drawn in favor of appellants courts are not permitted to consider them on demurrer. Only inferences favorable to the party against whose evidence the demurrer is directed may be considered. (*James v. Grigsby*, 114 Kan. 627, 634, 220 Pac. 267; *Meneley v. Montgomery*, 145 Kan. 109, 110, 64 P. 2d 550.) While it is true, as previously shown, appellee's car must have been farther than five feet removed from the truck when the truck first crossed the center line, the fact remains the Hall boy testified he and the driver *kept a lookout* and that there was no time for him to say anything *after he saw the truck suddenly cross the center of the road.*

Irrespective of what courts may believe about that evidence they are bound to accept it as true when challenged by demurrer. If the jury chose to believe the vehicles were so close to each other when appellee first, in the exercise of reasonable care saw, or could have seen, the truck on appellee's side of the road, it was in the province of the jury to believe it. Manifestly if the jury believed the vehicles were so close together when appelle first could have seen the truck cross the center line then there probably was insufficient time to turn aside and avoid the collision. In view of the uncontroverted facts the pivotal point in this case, insofar as contributory negligence is concerned, was the distance between the vehicles when appellee first could have observed the truck crossing onto his side of the road. And that was a jury question. No rule is better established than the one that courts will not consider or weigh conflicting evidence on direct or cross-examination of a witness. We, therefore, conclude the court did not err in overruling the demurrer to appellee's evidence.

The only evidence of appellant was that of the truck driver. His direct examination was exceedingly brief and we quote it:

"Q. About how long is the tractor on that truck and semi-trailer? A. I would say about sixteen feet.

"Q. About how long is the entire equipment, with the semi-trailer attached to the tractor? A. Oh, I would say about 35 feet.

"Q. Now, on the day that this collision occurred, after you turned out to pass the Fischer car and first saw the Ford automobile, how far away was it? A. Oh, approximately about 600 feet."

There was no cross-examination of that witness. The jury resolved the sharp conflict in the testimony of the truck driver and that of appellee's witness, Leo Hall, in favor of the truck driver and found appellee could have seen the truck on his side of the road when the vehicles were 600 feet apart. The special findings of the jury were:

1. How far was plaintiff's automobile from defendant's truck when plaintiff could have seen the truck on plaintiff's side of the highway? A. 600 feet.

2. What, if anything, prevented plaintiff from avoiding the collision by turning his automobile aside, after he saw or could have seen defendants' truck on plaintiff's side of the highway? A. Insufficient time.

3. At what speed was plaintiff's automobile travelling when he first saw or could have seen defendants' truck on plaintiff's side of the highway? A. Approximately 45 to 50 miles per hour.

4. At what speed was plaintiff's automobile travelling at the time of the collision? A. Approximately 45 to 50 miles per hour.

5. Was plaintiff's automobile ever turned from a direct course on the highway prior to the impact? A. No.

Appellants filed the following posttrial motions:

1. Come now the defendants and move the court to set aside the jury's answer to special question No. 2.

2. Come now the defendants and move the court to render judgment in favor of the defendants notwithstanding the general verdict in favor of plaintiff.

3. Come now the defendants and move the court for judgment in favor of the defendants upon the special findings of the jury.

The motions were overruled. Counsel for appellee do not contend there was evidence that the time was insufficient for appellee to turn aside and avoid the collision when the two vehicles, as found by the jury, were 600 feet apart at the time appellee first could have seen the truck on his side of the road. Manifestly, appellee introduced no evidence on that point for the obvious reason it was not his theory of the manner in which the collision occurred as is clearly disclosed by the averments of the petition previously stated. What appellee contends is that since appellants withdrew their motion

for a new trial the court cannot review the record for the purpose of showing there was no evidence to support the finding of insufficient time, citing *Hubbard v. Allen,* 168 Kan. 695, 215 P. 2d 647.

We shall review the special findings alone without reference to the evidence. Appellants contend findings 1, 3, 4 and 5 are specific findings of detailed facts which disclose appellee was guilty of contributory negligence in that within the 600 feet, while the truck was in plain view on appellee's side of the road, he did nothing to avert the collision; he did not reduce his speed of forty-five to fifty miles per hour and he made no attempt within that distance to turn aside in the slightest to avoid the collision.

Appellants further direct attention to finding 2 in which the jury expressly found the only thing which prevented appellee from avoiding the collision by turning aside after he saw, or could have seen, the truck on his side of the road, was "insufficient time." Appellants contend the finding of "insufficient time" constitutes a general finding in the nature of a conclusion and that it must yield to the specific detailed finding 1 that appellee had a distance of 600 feet within which to turn aside.

Appellee's theory of recovery was clearly predicated on the alleged fact the truck suddenly crossed the center line when appellee was only five, or a few feet further, removed and that under such circumstances he had insufficient time to avoid the collision. Had the jury so found appellee would have been absolved of contributory negligence. (*Meneley v. Montgomery,* supra.) The jury, however, specifically found against him on the question of the distance within which he could have seen the truck on his side of the road if he had looked. We think the jury's statement of "insufficient time" is a finding in the nature of a conclusion which must yield to the specific detailed finding that appellee was 600 feet away when he could have seen the truck. Obviously no one can reasonably or seriously contend a person cannot alter the direction of a car at least slightly after observing another car in his lane of traffic 600 feet away.

In a long line of decisions this court consistently has held a general finding in the nature of a conclusion must yield to contrary specific and detailed findings on the point in issue. (*Eldredge v. Sargent,* 150 Kan. 824, 833, 96 P. 2d 870; *Brittain v. Wichita Forwarding Co.,* 168 Kan. 145, 149, 211 P. 2d 77; *Bottenberg Implement Co. v. Sheffield,* 171 Kan. 67, 229 P. 2d 1004; and early cases therein cited.)

Manifestly it is wholly unreasonable to assume appellee would have maintained his position in the center of his side of the highway without yielding an inch if he had seen the truck directly in front of him for a distance of 600 feet. The only rational conclusion that can be reached is that appellee did not look and did not see what the law holds him responsible for having seen when, in the exercise of reasonable care, he could have seen it. Just recently and in harmony with many past decisions it was held there can be no recovery where a person strikes a stopped motor truck in his lane of traffic which could have been seen in the nighttime from a distance of 300 feet and where there was nothing to prevent him from turning aside to avoid the collision. (*Bottenberg Implement Co. v. Sheffield,* supra).

Numerous decisions from other jurisdictions involving similar facts, and much shorter distances between approaching cars, might be cited in support of the views herein expressed but we deem that unnecessary.

Counsel for appellee contend the general verdict resolves every issue joined by the pleadings in his favor. The statement is too broad where a jury also makes special findings. The case of *Hubbard v. Allen,* supra, relied upon by appellee, expressly states:

"In considering the defendant's contentions we bear in mind the rule that a general verdict imports a finding in favor of the prevailing party upon all of the issues in the case *not inconsistent* with the special findings. . . ." (p. 701.) (Our italics.)

Here, as previously indicated, finding 1 is directly contrary to the allegations of appellee's petition and his evidence with respect to the distance he could have seen the truck on his side of the road before the collision.

Appellee further contends the evidence adduced in his behalf discloses willful and wanton conduct on the part of the truck driver and that mere contributory negligence on appellee's part, if any, constitutes no defense. The district court did not instruct on wanton and willful conduct. It instructed only on the subjects of the truck driver's negligence and contributory negligence of appellee. We find no objection by appellee to the instructions given and no request for an instruction on wanton and willful conduct. The instructions became the law of the case. Appellee has not cross-appealed. Under these circumstances this court cannot reach the complaint.

We have examined the numerous cases cited by the respective

parties and many others. Various cases cited by appellee pertain to the order overruling appellants' demurrer to appellee's evidence. We have sustained the trial court's ruling on that point and need not further review the various cases in support of the decision.

The judgment of the district court is reversed with directions to render judgment in favor of appellants.

WERTZ, J. (concurring in part and dissenting in part): Time will not permit writing an exhaustive opinion and I will attempt to set forth my views briefly on the question concerning which I differ with the majority.

I do not agree with that part of the opinion which holds that the jury's answers to the special questions are so inconsistent with the general verdict as to compel a judgment to be entered thereon in favor of appellants.

In considering this question we must bear in mind the often repeated rule of this court that a general verdict imports a finding in favor of the prevailing party upon all of the issues in the case not inconsistent with the special findings, which are to be given such a construction, if possible, as will bring them into harmony with the general verdict. (*Hubbard v. Allen,* 168 Kan. 695, 701, 215 P. 2d 647; *Schroeder v. Nelson,* 157 Kan. 320, 326, 139 P. 2d 868; *Davis v. Kansas Electric Power Co.,* 159 Kan. 97, 108, 152 P. 2d 806; *Simeon v. Schroeder,* 170 Kan. 471, 474, 227 P. 2d 153.) In considering answers of the jury to special questions submitted, the court is not permitted to isolate one answer and ignore others, but all are to be considered together, and if one interpretation leads to inconsistency and another to harmony with the general verdict, the latter is to be adopted. (*Dick's Transfer Co. v. Miller,* 154 Kan. 574, 119 P. 2d 454; *Lee v. Gas Service Company,* 166 Kan. 285, 288, 201 P. 2d 1023.) In considering these special questions and answers together, I am unable to see wherein they are so inconsistent as to compel the overthrowing of the general verdict.

In view of these rules, let us examine the answer to special question No. 1: "How far was plaintiff's automobile from defendant's truck when plaintiff could have seen the truck on plaintiff's side of the highway?" Answer: "600 Feet." Wherein is this answer inconsistent with the general verdict? At this point plaintiff was not guilty of any negligence. We have held on a number of occasions and the majority opinion concedes the general rule to be that when the driver of a motor vehicle on a public highway is on his

proper side of the highway, he has a right to presume the driver of a car approaching from the opposite direction and on the left hand or wrong side of the highway will get over on his proper side in time to avoid a collision, and under such circumstances does not have to anticipate he will not do so. (*Clark v. Southwestern Greyhound Lines*, 148 Kan. 155, 79 P. 2d 906; *McComas v. Clements*, 137 Kan. 681, 21 P. 2d 895; *Crowe v. Moore*, 144 Kan. 794, 799, 62 P. 2d 846; *Balano v. Nafziger*, 137 Kan. 513, 21 P. 2d 896; *Smith v. Salts*, 170, Kan. 313, 224 P. 2d 1025.)

In *Duncan v. Branson*, 153 Kan. 344, 110 P. 2d 789, we stated at page 350:

"Defendant next argues that plaintiff was guilty of contributory negligence so as to preclude recovery, and his demurrer to the plaintiff's evidence should have been sustained. In the consideration of this argument we must give the evidence the most favorable consideration possible from the standpoint of the plaintiff. The plaintiff testified that he saw the light of the defendant's car for the first time when it was about 450 feet east of him; that he was on the south side of the highway going about 25 miles an hour; that it looked as if it might be going to turn south and the next thing he knew it crashed into him; that he had not figured defendant was going to strike him until he 'plowed right into him.' There was evidence to the effect that defendant was driving on the wrong side of the highway. The foregoing was sufficient to make the question of whether plaintiff was guilty of contributory negligence one for the jury. The plaintiff was entitled to believe that the defendant would get back and remain on his own side of the highway as the cars approached each other. Had the car of defendant been on the proper side of the road at the time they met there would have been no collision."

In view of what has been said, the answer to question No. 1 in my opinion neither adds to nor detracts from the general verdict.

The jury in answer to special question No. 2: "What, if anything, prevented plaintiff from avoiding the collision by turning his automobile aside after he saw or could have seen defendants' truck on plaintiff's side of the highway," answered "insufficient time." It must be remembered that the truck and plaintiff's car were approaching each other at the rate of approximately 130 feet a second, which gave the plaintiff only 4.6 seconds to determine whether the truck would get on its own side of the road, and what action he should take. With such a short time to deliberate, can it be said as a matter of law that this was negligence barring recovery? The jury under the circumstances said it was not.

The answers to questions No. 3 and 4 disclosed that plaintiff's automobile was at all times traveling between 45 and 50 miles per hour. Without laboring this point further, this court has said on

many occasions that such speed was not unreasonable or negligent under certain conditions; that traffic on the highways must move in keeping with other traffic on the highways. The answer to question No. 5 was that plaintiff never turned from a direct course. In harmonizing the answers to special questions with the general verdict, the jury apparently—and rightfully so—found all the issues in favor of the appellee and against appellants, as disclosed by the pleadings and the evidence under proper instructions from the court, and by their answers to special questions found that appellee first saw the truck on the wrong side of the road when it was 600 feet away; that appellee had a right to presume that such truck would get back on its right side of the road in sufficient time to avoid the collision, until the appellee in the exercise of ordinary care determined that said truck would not get back on its own side of the road, and at that time there was insufficient time for appellee to either slacken his speed or turn aside even if he could have done so safely, and by such general verdict found that the failure of the appellee to act in such case was not a contributing cause or proximate cause of the collision and injury and that the sole and proximate cause of the damage was the appellants' negligence.

It is an elementary rule of this court and one followed by decisions from nearly every court in the land, that the question of negligence and contributory negligence are matters for the jury. When the facts relating to contributory negligence are of such character that reasonable minds might reach different conclusions thereon, it is a question of fact for the jury to determine. (*DeGraw v. Kansas City & Leavenworth Transportation Co.*, 170 Kan. 713, 228 P. 2d 527; *Keir v. Trager*, 134 Kan. 505, 7 P. 2d 49, 81 A. L. R. 181, *Balano v. Nafziger*, supra; cases cited Hatcher's Kansas Digest, Negligence, § 75; West's Kansas Digest, Negligence, § 136 [26].)

I cannot say that the answer to question No. 2 is in the nature of a conclusion, nor can I say that the finding is inconsistent with the pleadings or evidence. It seems to me that it is in harmony with both. The questions of negligence and contributory negligence were both matters on which reasonable minds might differ and were questions for the jury in the instant case. The jury determined the matter after hearing and seeing the witnesses testify and being familiar with the surrounding circumstances, and such verdict was approved by a trial court of years of experience, and I cannot bring myself to the conclusion that the special findings returned by the jury are so inconsistent as to compel a judgment

thereon in favor of appellants. Neither can I bring myself to the conclusion from a reading of extracts of the evidence submitted in this case that the jury should have rendered a different verdict. To me that is usurping the functions of the jury and trial court. I believe the judgment should be affirmed.